STATE OF MAINE                                     SUPERIOR COURT
KENNEBEC, ss.                                       CIVIL DIVISION
                                                DOCKET NO. CV-17-17

SETH T. CAREY,               )

      Plaintiff,               )

                                  )      **ORDER ON MOTIONS FOR**
v.                                 )      **SUMMARY JUDGMENT**

MAINE BOARD OF OVERSEERS OF  )
THE BAR, et al.,                )

      Defendants.           )

On October 25, 2017, this Court issued an Order dismissing all of Plaintiff's claims against the various Defendants other than the state law tort claims against the governmental entity Defendants. The Maine Board of Overseers of the Bar (the "BBO"), the Maine District Court, the Office of Clerk of Courts, and the Maine Commission on Indigent Legal Services (collectively, the "Judicial/MCILS Defendants") attached a "Statement Relating to Self-Insurance Pursuant to 14 M.R.S.A. § 8116" to their respective Motions to Dismiss in an attempt to show each entity was immune under the Maine Tort Claims Act ("MTCA").

Because it was not particularly clear to the Court what the document was and whether it was prepared for litigation purposes, the Court found it to be a proper circumstance in which to convert the Motions to Dismiss filed by the above governmental entities to motions for summary judgment. *See* M.R. Civ. P. 12(b). The remaining parties were ordered to file appropriate summary judgment paper work on a briefing schedule in conformity with M.R. Civ. P. 7. Accordingly, the BBO and Judicial/MCILS Defendants filed respective Motions for Summary Judgment on the governmental entity immunity issue with supporting Statements of Material

1

Fact on November 13, 2017. Pursuant to M.R. Civ. P. 7(c)(2), Plaintiff's oppositions were due twenty-one days after the filing of the Motions, which was December 4, 2017. To date, Plaintiff has not filed an opposition to either Motion. However, even when a motion for summary judgment is unopposed, the Court must still review the statement of material facts submitted by a party moving for summary judgment to determine whether the material factual assertions are properly supported. *See Cote Corp. v. Kelley Earthworks Inc.*, 2014 ME 93, ¶ 8, 97 A.3d 127.

### BACKGROUND

The background of this case is thoroughly discussed in this Court's Order from October 25, 2017, thus the Court will spare the parties and any other readers from a detailed recounting. For the purposes of this Order, Plaintiff's remaining claims—the state law tort claims against the government entity Defendants—are what matter. Those claims are: Count I (Negligence); Count III (Negligence & Abuse of Process); Count IV (Invasion of Privacy & Disclosure); Count V (Defamation & False Light); Count VI (Malicious Prosecution); Count VII[1] (Malicious Prosecution & Abuse of Process); Count VIII (Fraud Upon the Court); Count IX (Misrepresentation); Count X (Conspiracy); Count XI (Malicious Prosecution, Negligence, Abuse of Process); Count XII (Tortious Interference with Prospective and Actual Economic Advantage, Tortious Interference with Contractual Relations); Count IXX[2] [sic] (Negligent Infliction of Emotional Distress); Count XX (Intentional Infliction of Emotional Distress); and Count XXV (Invasion of Privacy—False Light). Counts I, III, IV, V, VI, VIII, IX, X, XI, XII, IXX, XX, and XXV are asserted against the BBO. Counts I, III, IV, V, VI, VII, VIII, IX, X, XII, IXX, and XX are asserted against the District Court. Counts I, IV, V, VI, VIII, IX, X, XII, IXX, and XX are asserted against the Office of Clerk of Courts. Counts I, III, IV, V, VI, VIII, IX, X,

---

[1] Plaintiff listed Count VII twice. The only one at issue here is the claim against the District Court.
[2] Plaintiff's First Amended Complaint skips from Count XIII to Count IXX—presumably intended to be XIX—to Count XX. There are no claims labeled Counts XIV, XV, XVI, XVII, or XVIII.

2

XII, IXX, and XX are asserted against MCILS.

## LEGAL STANDARD

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one capable of affecting the outcome of the litigation. *Savell v. Duddy*, 2016 ME 139, ¶ 19, 147 A.3d 1179. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "Summary judgment is no longer an extreme remedy." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *See Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179.

## DISCUSSION

The common law of sovereign immunity in Maine "has been entirely displaced and supplanted by the enactment of the [MTCA]." *Moore v. City of Lewiston*, 596 A.2d 612, 614 (Me. 1991) (citing *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 424 (Me. 1987)). Accordingly, "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103(1) (2016). Under the MTCA, a "'[g]overnmental entity' [is] the State . . . [which includes] the State of Maine or any office, department, agency, authority, commission, board, institution, hospital or other instrumentality of the State." *Id.* §§ 8102(2), (4).

Practically speaking, the MTCA provides governmental entities with a broad grant of immunity from tort claims, subject to specific statutory exceptions. *See Darling*, 535 A.2d at 424. Through the MTCA, the State has only waived immunity for its negligent operation of

3

vehicles, negligent building and road construction and maintenance, and negligent discharge of pollutants, as well as "to the limits of the insurance coverage" when the State purchases liability insurance for coverage in areas in which it would normally be immune. *See* 14 M.R.S. §§ 8104-A, 8116. When a governmental entity has not waived the immunity granted by the MTCA through the purchase of liability insurance, "the governmental entity against whom a claim is made bears the burden of establishing that it does not have insurance coverage for that claim." *Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995).

It is readily apparent that the BBO, the Maine District Court, the Office of Clerk of Courts, and MCILS are governmental entities within the meaning of the MTCA. The BBO is an attorney disciplinary board established by the Maine Bar Rules promulgated by the Supreme Judicial Court, the Maine District Court *is* an arm of the State of Maine Judicial Branch, the Office of Clerk of Courts is a part of the legislatively-created Administrative Office of the Courts and part of the Judicial Branch, and MCILS is a legislatively-created commission. Each governmental entity Defendant is covered by the provisions of the MTCA. 14 M.R.S. §§ 8102(2), (4). Thus, they are immune unless that immunity has been waived. *See Darling*, 535 A.2d at 424. Plaintiff has not alleged any facts that the governmental entities themselves have waived the broad immunity granted to them under the MTCA (i.e., he has not alleged any of the subject entities engaged in any negligent operation of vehicles, negligent building and road construction and maintenance, or negligent discharge of pollutants). Because of this, the only way Plaintiff could potentially recover from the entities is if any of the entities maintains insurance coverage in areas for which they would otherwise be immune under the MTCA. Each entity maintains it has not waived this broad immunity through the purchase of liability insurance.

4

The Court has reviewed the BBO's and Judicial/MCILS Defendants' respective Motions and Statement of Material Facts, which are both properly supported by Assistant Attorney General Thomas A. Knowlton's affidavit and related exhibits, as well as Director of the Division of Risk Management David Fitts' affidavit and related exhibit. The relevant summary judgment record establishes the following:

David Fitts has been the Director of the Division of Risk Management for the State of Maine at all times relevant to the allegations in this case. (Fitts Aff. ¶ 1.) Mr. Fitts maintains custody over all past and present insurance policies for the State and is familiar with the insurance coverage and self-insurance coverage provided to the State of Maine, its agencies, and its employees. (*Id.* ¶ 3.) Mr. Fitts is further responsible for administering the State's self-insurance funds established by 5 M.R.S. §§ 1731 & 1737. (*Id.* ¶ 4.) Pursuant to 14 M.R.S. § 8116, if the State of Maine or any of its agencies procures liability insurance, it must do so through the Division of Risk Management. (*Id.* ¶ 5.) The Division of Risk Management maintains written statements of self-insurance which set forth the financial limits of liability and the scope of the liability assumed by the State of Maine and its agencies, and Mr. Fitts is the custodian of these statements. (*Id.* ¶ 6.) Mr. Fitts has reviewed the written statement of self-insurance that was in effect during the period relevant to the allegations in this case. (*Id.* ¶ 8.)

During all relevant times, including the period relevant to the allegations in this case, neither the State of Maine nor any of the governmental entity Defendants in this case have procured commercial liability insurance which would provide coverage for Plaintiff's claims. (*Id.* ¶ 7.) Pursuant to this written statement of self-insurance, coverage is only limited to the areas for which governmental immunity has been waived per 14 M.R.S. § 8104-A. (*Id.* ¶¶ 9-10.) In fact, the written statement of self-insurance explicitly states that there is no insurance

coverage "for any liability where immunity exists under the [MTCA], under any other statute, or under the common law." (*Id.* ¶ 11; Fitts Aff. Ex. A, at 3.)

Thus, it is clear there is no genuine issue of material fact and the BBO and Judicial/MCILS Defendants are entitled to judgment as a matter of law. Each government entity Defendant is immune from Plaintiff's tort claims pursuant to the MTCA. Accordingly, Plaintiff has no claims remaining.

The entry is:

1. The Maine Board of Overseers of the Bar's Motion for Summary Judgment is **GRANTED**.
2. The Maine District Court, the Office of Clerk of Courts, and the Maine Commission on Indigent Legal Services' Motion for Summary Judgment is **GRANTED**.
3. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 1/3/18

Hon. William R. Anderson
Justice, Maine Superior Court

STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL DIVISION
                                                  DOCKET NO. CV-17-17

                                    )
SETH T. CAREY,                      )
                                    )
            Plaintiff,              )
                                    )
                                    )    **ORDER ON MOTIONS TO DISMISS**
v.                                  )    **& M.R. CIV. P. 80C APPEAL OF**
                                    )    **ADMINISTRATIVE ACTION**
                                    )
MAINE BOARD OF OVERSEERS OF         )
THE BAR, et al.,                    )
                                    )
            Defendants.             )


## Contents of Order

BACKGROUND ........................................................................................................... 1

   I.   Timeline of Underlying Disciplinary Proceedings Against Plaintiff................................. 3

LEGAL STANDARD................................................................................................... 5

MOTIONS TO DISMISS .......................................................................................... 9

   I.  State Defendants .............................................................................................. 9

     A.  Tort Claims ............................................................................................. 9

       1.  Governmental Entities ....................................................................... 9

       2.  Governmental Employee Immunity.................................................. 12

          a.  BBO Defendants' Motion to Dismiss.................................. 16

            i.  Discretionary Function Immunity ................................. 18

            ii.  Prosecutorial Immunity................................................ 22

            iii.  Conclusion ................................................................. 25

          b.  Judicial Defendants' Motion to Dismiss.............................. 25

            i.  Jurist Defendants (Judge Nancy Carlson, Judge Maria Woodman, Justice Lance Walker) ........................................................................ 26

        ii.    Administrative Defendants (Elizabeth Maddaus, Laureen Pratt, Darlene Richards) ................................................................................................ 30

       c.    MCILS Defendant John Pelletier's Motion to Dismiss ......................................... 32

       d.    Statements During BBO Proceedings by Judge Carlson, Judge Woodman, Justice Walker, Elizabeth Maddaus, Laureen Pratt, Darlene Richards, and John Pelletier ................................................................................................................ 36

       e.    Conclusion ............................................................................................................ 40

    B.    Non-Tort Claims ............................................................................................................ 41

      1.    MUTPA and RICO .................................................................................................. 41

      2.    Plaintiff's M.R. Civ. P. 80C Appeal of Administrative Action ............................... 46

      3.    Counts XXIII and XXIV (Requests for Declaratory Judgment) .............................. 49

II.    Dr. Donovan's Motions to Dismiss ...................................................................................... 49

    A.    Dr. Donovan's Special Motion to Dismiss First Amended Complaint Pursuant to 14 M.R.S.A. § 556 ............................................................................................................... 50

    B.    Dr. Donovan's Motion to Dismiss Pursuant to Rule 12(b)(6) ....................................... 56

III.    The Journal's Motion to Dismiss ......................................................................................... 56

    A.    Background ..................................................................................................................... 56

    B.    Legal Discussion ........................................................................................................... 58

      1.    Counts That Clearly Do Not Apply to the Journal ................................................... 58

      2.    Publication Counts. .................................................................................................. 58

        a.    Negligence, Defamation and Violation of Privacy .............................................. 59

         i.    Negligence and Defamation .......................................................................... 59

         ii.    Violation of Privacy ..................................................................................... 60

      3.    RICO ........................................................................................................................ 61

      4.    Remaining Counts .................................................................................................... 63

## Order

Presently before the Court in this matter are the Motions to Dismiss pursuant to M.R. Civ. P. 12(b) filed by the following parties: (1) the Maine Board of Overseers of the Bar ("BBO"), Bar Counsel J. Scott Davis, Deputy Bar Counsel Aria Eee, and Jacqueline M. Rogers (collectively, the "BBO Defendants"); (2) Judge Maria Woodman, Judge Nancy Carlson, Justice Lance Walker, the Maine District Court, the Office of Clerk of Courts, the Maine Commission on Indigent Legal Services ("MCILS"), Clerk Darlene Richards, Clerk Laureen Pratt, Director John Pelletier, and Manager Elizabeth Maddaus (collectively, the "Judicial/MCILS Defendants"); (3) Matthew Donovan, M.D. ("Dr. Donovan"); and (4) the Lewiston Sun Journal (the "Journal"). Dr. Donovan also filed a Special Motion to Dismiss First Amended Complaint Pursuant to 14 M.R.S.A. § 556. Separately, Plaintiff filed a M.R. Civ. P. 80C Appeal of Administrative Action.

## BACKGROUND

Plaintiff Seth T. Carey—a licensed member of the Maine Bar—filed a complaint on January 17, 2017, against the Defendants listed above. Before any parties filed responsive pleadings, and in conformity with M.R. Civ. P. 15(a), Plaintiff filed a First Amended Complaint ("FAC") on February 3, 2017. The claims in Plaintiff's FAC generally arise out of the Defendants' involvement in relation to a November 21, 2016, disciplinary Order—and the various interactions and stages of the BBO proceedings leading up to it—issued by a single Justice appointed by the Supreme Judicial Court pursuant to M. Bar R. 13(g) regarding Plaintiff's conduct as an attorney.

Plaintiff asserts the following claims in his FAC: Count I (Negligence); Count II (Negligence); Count III (Negligence & Abuse of Process); Count IV (Invasion of Privacy &

1

Disclosure); Count V (Defamation & False Light); Count VI (Malicious Prosecution); Count VII[1] (Malicious Prosecution & Abuse of Process); Count VIII (Fraud Upon the Court); Count IX (Misrepresentation); Count X (Conspiracy); Count XI (Malicious Prosecution, Negligence, Abuse of Process); Count XII (Tortious Interference with Prospective and Actual Economic Advantage, Tortious Interference with Contractual Relations); Count XIII (Violation of Maine Unfair Trade Practices Act ("MUTPA")); Count IXX[2] [sic] (Negligent Infliction of Emotional Distress); Count XX (Intentional Infliction of Emotional Distress); Count XXI[3] (Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")); Count XXII (M.R. Civ. P. 80C Appeal of Administrative Action); Count XXIII (Declaratory Judgment); Count XXIV (Declaratory Judgment); Count XXV (Invasion of Privacy—False Light); Count XXVI (Punative [sic] Damages); Count XXVII (Retraining [sic] Order); and, Count XXVIII (Attorneys [sic] Fees).

On an initial note, Plaintiff's Counts XXVI (Punative [sic] Damages) and XXVII (Attorneys [sic] Fees) are not substantive but are properly brought as part of a damages request. These counts are dismissed. Further, Plaintiff's Count XXVII (Retraining [sic] Order) is discussed in Motions to Dismiss Section III(B)(4), *infra*, because it is clear from Plaintiff's FAC that Count XXVII is directed solely at the Journal and does not apply to other Defendants. Although Count XXII does not necessarily specify which Defendants it is pleaded against in the way that other Counts do, it is clear Count XXII deals solely with MCILS' affirmation of John

---

[1] Plaintiff listed Count VII twice, one directed specifically at Judge Nancy Carlson and the other directed at Judge Carlson, Judge Woodman, Denise Richards, Laureen Pratt, Elizabeth Maddaus, and the District Court. In the following sections, Count VII(1) will refer to the claim directed at Judge Carlson's alleged procedural errors during the small claims case Plaintiff had before her. Count VII(2) will refer to the claim directed at the several defendants listed above.

[2] Plaintiff's FAC skips from Count XIII to Count IXX—presumably intended to be XIX—to Count XX. There are no claims labeled Counts XIV, XV, XVI, XVII, or XVIII.

[3] The Court will address Counts XIII and XXI as they relate to the State Defendants separately in Motions to Dismiss Section I(B)(1), *infra*, and in Motions to Dismiss Section III(B)(3)-(4), *infra*, as they relate to the Journal.

2

Pelletier's decision to remove Plaintiff from the MCILS' roster of attorneys. Thus, Count XXII is not considered against other Defendants because it clearly does not apply to them. The specific Counts addressed in this paragraph are not discussed in this Order with respect to Defendants they clearly do not apply to, except to the extent necessary to clarify any aspect of the Order.

All Defendants moved to dismiss Plaintiff's FAC. The BBO Defendants and Judicial/MCILS Defendants based their respective Motions to Dismiss on both governmental immunity provided by the Maine Tort Claims Act ("MTCA"), 14 M.R.S. §§ 8101-8118 (2016), and failure to state a claim upon which relief could be granted.[4] Plaintiff has not objected to the assertion of governmental immunity at this stage and has instead addressed the issue on the merits. Because Plaintiff's FAC is rich with factual detail describing what the BBO Defendants, Judicial Defendants, and MCILS Defendants allegedly did to harm Plaintiff, the Court finds this to be one of the rare instances in which it is appropriate to address the issue of governmental immunity at the M.R. Civ. P. 12(b)(6) stage. *See Bussell v. City of Portland*, 1999 ME 103, ¶ 2, 731 A.2d 862.

All told, due to the number of Defendants and the number of civil claims for damages asserted against each Defendant, Plaintiff's FAC contains 224 individual counts which the Court must address in this Order.

## I. Timeline of Underlying Disciplinary Proceedings Against Plaintiff[5]

Because Plaintiff's FAC does not provide a coherent chronology of the events complained of, the Court has constructed this timeline based on Plaintiff's FAC and the various

---

[4] The BBO Defendants also asserted immunity pursuant to M. Bar R. 12. However, it only provides immunity "to the extent provided by statute and other provisions of law," thus it does not provide any additional immunity beyond what is provided by the MTCA or other provisions of law. M. Bar R. 12.

[5] See the Legal Standard Section, *infra*, for the discussion regarding taking judicial notice of certain orders from the underlying BBO proceeding for the purpose of understanding the sequence of events which gave rise to this lawsuit.

3

orders issued during the BBO proceedings against Plaintiff which form the basis of this lawsuit. On December 14, 2014, Maria Woodman—a Family Law Magistrate at the time—filed a complaint with the BBO regarding her concerns about Plaintiff's competence as an attorney based on his appearances before her. (Pl.'s Amnd. Compl. ¶¶ 70-75, 88-106; GC Order 1; J. Brennan Order 2.) In May 2015, Dr. Donovan filed a grievance complaint with the BBO against Plaintiff wholly independent from Judge Woodman's based on his interactions with Plaintiff during a Maine Workers' Compensation Board proceeding in which Plaintiff represented the claimant. (Pl.'s Amnd. Compl. ¶¶ 196-216; J. Brennan Order 3.) Pursuant to M. Bar R. 13(d)(6), Bar Counsel J. Scott Davis brought Dr. Donovan's grievance directly to a Single Justice of the Supreme Judicial Court because it was filed during the pendency of an already-existing disciplinary proceeding against Plaintiff, i.e., the one based on Judge Woodman's grievance complaint. (J. Brennan Order 3 n.2.)

On June 19, 2015, the BBO brought a disciplinary petition against Plaintiff to a panel of the Grievance Commission of the BBO. (GC Order 1.) The Grievance Commission conducted a public hearing in late 2015 pursuant to M. Bar R. 13(e)(7), which spanned the dates of September 17-18, October 19, and November 20. (Pl.'s Amnd. Compl. ¶ 18; GC Order 1.) Before the Grievance Commission issued its Order, legal counsel for Bangor Savings Bank—with whom Plaintiff maintained his IOLTA account—filed a grievance complaint against Plaintiff on January 25, 2016, alleging misuse of the account. (Pl.'s Amnd. Compl. ¶ 76; J. Brennan Order 7.) Similar to Dr. Donovan's grievance complaint, Bar Counsel brought Bangor Savings Bank's grievance directly to a Single Justice of the Supreme Judicial Court pursuant to M. Bar R. 13(d)(6). (J. Brennan Order 7 n.3.) When the Grievance Commission finally issued its Order on February 2, 2016, it sanctioned Plaintiff with a public reprimand for violating M.R.

4

Prof. Conduct 1.1. (GC Order 6.) The Grievance Commission imposed probation against Plaintiff with particular requirements Plaintiff was to comply with. (GC Order 7.)

On March 7, 2016, Justice Gorman granted Plaintiff's request for a stay in the matter and temporarily relieved Plaintiff from having to comply with the requirements of the Grievance Commission's Order. (J. Gorman Interim Order 1.) However, on May 18, 2016, Justice Gorman found probable cause that the disciplinary proceeding against Plaintiff could result in suspension or disbarment and directed Bar Counsel to file an Information and proceed as an attorney discipline action pursuant to M. Bar R. 13(g). (J. Gorman Order to File 1.) The result of that attorney discipline action was Justice Brennan's November 21, 2016, Order.

## LEGAL STANDARD

When deciding a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6),[6] "all *well-pleaded* material allegations are taken as admitted and construed in the light most favorable to the plaintiff." *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985) (emphasis added). While the Court must accept as true all well-pleaded factual allegations in the complaint, it is "not bound to accept the complaint's legal conclusions." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994) (citing *Robinson v. Wash. Cty.*, 529 A.2d 1357, 1359 (Me. 1987)).

In order for dismissal of a complaint for failure to state a claim to be proper, "it must

---

[6] The BBO Defendants and the Judicial/MCILS Defendants also moved to dismiss pursuant to M.R. Civ. P. 12(b)(1) for those tort claims directed against State governmental entities on the basis of the sovereign immunity provided by the MTCA. However, the Law Court originally refrained from deciding, where the State has consented to suit "by adoption of a comprehensive tort claims statute such as the [MTCA] (14 M.R.S.A. §§ 8101 et seq.), whether the assertion that a particular tort claim is not within the scope of such a statute is an assertion of lack of jurisdiction, or is the assertion of an affirmative defense." *Brann v. State*, 424 A.2d 699, 702 n.3 (Me. 1981).

It has since stated governmental immunity is an affirmative defense, *see, e.g., Danforth v. Gottardi*, 667 A.2d 847, 848 (Me. 1995), but it appears there may be some debate surrounding whether or not the MTCA is a jurisdictional bar to suit. One Superior Court Justice recently argued the MTCA does not also present a jurisdictional bar to suit. *See Williams v. Me. HHS*, Nos. CV-15-0157, CV-15-0158, CV-15-0159, CV-15-0160, CV-15-0161, 2015 Me. Super. LEXIS 205, at *3-7 (Dec. 14, 2015). The Court is proceeding on the basis of the governmental immunity provided by the MTCA being asserted only as an affirmative defense and subject to dismissal pursuant to M.R. Civ. P. 12(b)(6).

appear 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310 (quoting *Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995)). A motion to dismiss tests the legal sufficiency of the complaint, and is a pure question of law. *Persson v. Dep't of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363; *In re: Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217. A complaint only needs to consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741. While Maine is a notice pleading state, that does not mean a plaintiff could "proceed on a cause of action if that party's complaint has failed to allege facts that, if proved, would satisfy the elements of the cause of action." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶¶ 16-17, 19 A.3d 823. Thus, the plaintiff must "allege facts sufficient to demonstrate that [he] has been injured in a way that entitles him or her to relief."[7] *Id.* ¶ 17.

On a motion to dismiss for failure to state a claim, the Court generally cannot consider documents outside the pleadings without treating the motion as one for summary judgment. *See* M.R. Civ. P. 12(b); *see also Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, the Court can consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." *Id.* ¶ 11. When the Court does consider such documents, those documents merge into the pleadings. *Id.* ¶ 10.

The BBO Defendants, the Judicial/MCILS Defendants, and Dr. Donovan each attached one such document to their respective Motions to Dismiss—and the Journal directed the Court to

---

[7] Plaintiff's FAC is replete with statements of actions being "willful," "wanton," "intentional," "malicious," and "reckless," among other adjectives. The Court notes that these are not facts.

6

the same document—which the Court has considered in its determinations on the numerous dismissal motions. That document is the Order issued by Justice Brennan on November 21, 2016, in Plaintiff's underlying disciplinary proceeding before the BBO ("J. Brennan Order"). *See Bd. of Overseers of the Bar v. Carey*, BAR-16-15 (Nov. 21, 2016) (Brennan, A.R.J.). The Court believes this fits within the *Moody* exception for several reasons.

First, it was issued during the pendency of a disciplinary action against a licensed attorney pursuant to the Maine Bar Rules, which are promulgated by the head of the Judicial Branch—the Supreme Judicial Court of Maine. *See* 4 M.R.S. §§ 1-58 (2016). Specifically, "[t]he Supreme Judicial Court has general administrative and supervisory authority over the judicial branch and shall make and promulgate rules, regulations and orders governing the administration of the judicial branch." *Id.* § 1. The Supreme Judicial Court also has "inherent authority . . . to regulate attorney conduct," which it has done through the official Maine Bar Rules. M. Bar R. Preamble. Second, the document is disseminated publicly. *See* M. Bar R. 19. It is maintained on the BBO's public website, accessible by any member of the public who wishes to view it.[8] *See Bd. of Overseers of the Bar v. Seth T. Carey, Esq., Order, M. Bar R. 13(g), Board of Overseers of the Bar* (Nov. 21, 2016), http://www.mebaroverseers.org/dah_schedule/decisions.html?id=722117. The BBO maintains this information on its website because it is required by the Maine Bar Rules to "inform the public about the existence and operation of the system and the disposition of each matter in which public discipline has been imposed . . . ." M. Bar R. 1(h)(7). Third, it is central to

---

[8] The *Moody* Court pointed to reasoning from several Federal cases to support its decision to allow official public documents to be considered on a motion to dismiss for failure to state a claim. *See Moody*, 2004 ME 20, ¶¶ 9-12, 843 A.2d 43. One of the cases detailed examples of what courts have found to be public records in these circumstances, and those "include[d] criminal case dispositions such as convictions or mistrials, letter decisions of government agencies, and published reports of administrative bodies . . . ." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (citations omitted). The Court believes a public order issued by a Single Justice sitting on behalf of the Supreme Judicial Court of Maine in an attorney disciplinary proceeding is more than comfortably analogous to the types of documents referenced by the Third Circuit.

Plaintiff's claims because many of his allegations stem from the underlying disciplinary proceeding and the various parties involved, and this document represents the culmination of that proceeding. Lastly, Plaintiff has knowledge of the contents of this document because he consented to its entry, and he has not challenged the document's authenticity.

Because the Court is considering the aforementioned document in deciding these Motions to Dismiss and it fits within the categories detailed in *Moody*, it is deemed merged into the pleadings. *See Moody*, 2004 ME 20, ¶ 10, 843 A.2d 43.

Further, there are several other documents from the underlying disciplinary proceeding before the BBO—while not attached to the Motions to Dismiss—of which the Court takes judicial notice. *See* M.R. Evid. 201(b)(2) (courts may take judicial notice of facts which "[c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); *see also King v. King*, 2013 ME 56, ¶ 4 n.1, 66 A.3d 593 (where the Law Court took "judicial notice of the dockets of the U.S. District Court for the District of Maine and the U.S. Court of Appeals for the First Circuit. *See Guardianship of Jewel M.*, 2010 ME 80, ¶ 24, 2 A.3d 301 (stating that a court may take judicial notice of pleadings and docket entries in other cases)").[9]

---

[9] As the Law Court recently cautioned,

> [a] clear line of demarcation exists between the *fact* that a pleading, docket entry, or order exists in separate proceedings—all of which are subject to judicial notice if germane to an issue in later judicial proceedings—and the actual *evidence* submitted in the earlier proceedings. A court . . . cannot, under the rubric of judicial notice, simply *sua sponte* import and rely upon evidence presented in an earlier judicial proceeding.

*Cabral v. L'Heureux*, 2017 ME 50, ¶ 11, 157 A.3d 795. The Court emphasizes that it is taking judicial notice of official orders in the underlying disciplinary proceeding before the Grievance Commission and the single Justice of the Supreme Judicial Court because the existence of these documents helps clarify the timeline of events discussed in Background Section I, *supra*, which gives rise to Plaintiff's claimed injury because the timeline is not clearly detailed chronologically in Plaintiff's FAC. It is not relying on the evidence that was presented, except to the extent Plaintiff's well-pleaded factual allegations repeat the same evidence presented in the underlying disciplinary proceeding.

First is the Report of Findings and Order of Panel C of the Grievance Commission ("GC Order"). See *Bd. of Overseers of the Bar v. Carey*, GCF-14-529 (Feb. 2, 2016), but not for the purpose of adopting the evidence presented with regard to any allegations against Mr. Carey. Second is the Interim Order issued by Justice Gorman which stayed the Grievance Commission's Report of Findings and Order ("J. Gorman Interim Order"). *See Bd. of Overseers of the Bar v. Carey*, BAR-16-8 (Mar. 7, 2016) (Gorman, J.). Last is the Order issued by Justice Gorman directing Bar Counsel to file information with the Court and for the matter to be conducted as an attorney discipline action pursuant to M. Bar R. 13(g) ("J. Gorman Order to File"). *See Bd. of Overseers of the Bar v. Carey*, BAR-16-8 (May 18, 2016) (Gorman, J.).[10]

## MOTIONS TO DISMISS

### I. State Defendants

### A. Tort Claims

#### 1. Governmental Entities

The common law of sovereign immunity in Maine "has been entirely displaced and supplanted by the enactment of the [MTCA]." *Moore v. City of Lewiston*, 596 A.2d 612, 614 (Me. 1991) (citing *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 424 (Me. 1987)). Accordingly, "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103(1) (2016). Under the MTCA, a "'[g]overnmental entity' [is] the State . . . [which includes] the State of Maine or any office, department, agency, authority, commission, board, institution,

---

[10] Each of these is also publicly available on the BBO's website. *See Bd. of Overseers of the Bar v. Seth T. Carey, Esq., Report of Findings and Order of Panel C of the Grievance Commission, M. Bar R. 7.1(e)(7), Board of Overseers of the Bar* (Feb. 2, 2016), http://www.mebaroverseers.org/dah_schedule/decisions.html?id=669077; *Bd. of Overseers of the Bar v. Seth T. Carey, Esq., Interim Order, Board of Overseers of the Bar* (Mar. 7, 2016), http://www.mebaroverseers.org/dah_schedule/decisions.html?id=671359; *Bd. of Overseers of the Bar v. Seth T. Carey, Esq., Order, Board of Overseers of the Bar* (May 18, 2016), http://www.mebaroverseers.org/dah_schedule/decisions.html?id=685340.

9

hospital or other instrumentality of the State." *Id.* §§ 8102(2), (4).

Practically speaking, the MTCA provides governmental entities with a broad grant of immunity from tort claims, subject to specific statutory exceptions. *See Darling*, 535 A.2d at 424. Through the MTCA, the State has only waived immunity for its negligent operation of vehicles, negligent building and road construction and maintenance, and negligent discharge of pollutants, as well as "to the limits of the insurance coverage" when the State purchases liability insurance for coverage in areas in which it would normally be immune. *See* 14 M.R.S. §§ 8104-A, 8116. When a governmental entity has not waived the immunity granted by the MTCA through the purchase of liability insurance, "the governmental entity against whom a claim is made bears the burden of establishing that it does not have insurance coverage for that claim." *Danforth*, 667 A.2d at 848. Governmental immunity can successfully be used in a motion to dismiss only when "the complaint contains within its four corners allegations of sufficient facts to show the existence and applicability of the immunity." *Id.* When the "*absence* of liability insurance is not apparent from [the plaintiff's] complaint," dismissal pursuant to M.R. Civ. P. 12(b)(6) is not proper. *Id.*

It is readily apparent that the BBO, the Maine District Court, the Office of Clerk of Courts, and MCILS are governmental entities within the meaning of the MTCA. The BBO is an attorney disciplinary board established by the Maine Bar Rules promulgated by the Supreme Judicial Court, the Maine District Court *is* an arm of the State of Maine Judicial Branch, the Office of Clerk of Courts is a part of the legislatively-created Administrative Office of the Courts and part of the Judicial Branch, and MCILS is a legislatively-created commission. Each governmental entity Defendant is covered by the provisions of the MTCA. 14 M.R.S. §§ 8102(2), (4). Thus, they are immune unless that immunity has been waived. *See Darling*, 535

10

A.2d at 424.

Plaintiff has not alleged any facts that the governmental entities themselves have waived the broad immunity granted to them under the MTCA (i.e., he has not alleged any of the subject entities engaged in any negligent operation of vehicles, negligent building and road construction and maintenance, or negligent discharge of pollutants). Because of this, the only way Plaintiff could potentially recover from the entities is if any of the entities maintains insurance coverage in areas for which they would otherwise be immune under the MTCA. While the BBO and Judicial/MCILS Defendants attached a "Statement Relating to Self-Insurance Pursuant to 14 M.R.S.A. § 8116" to their respective Motions to Dismiss in an attempt to show the entities do not maintain liability insurance in areas they would otherwise be immune, these cannot be dispositive of the issue at this stage in the proceeding because the absence of liability insurance is not apparent from Plaintiff's FAC. *See Danforth*, 667 A.2d at 848. This document is not being accepted as a *Moody* exception because it is not particularly clear what it is and whether it was prepared for litigation purposes.

However, because the BBO and Judicial/MCILS Defendants have provided the Court with this information, this is a proper circumstance in which to convert the Motions to Dismiss filed by the governmental entities to motions for summary judgment. *See* M.R. Civ. P. 12(b) (When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). This is a straightforward issue: either the governmental entities here have procured insurance for areas in which they are immune or they have not.

The Court **ORDERS** the BBO, the Maine District Court, the Office of Clerk of Courts,

11

and MCILS to file all material—including supporting affidavits—required by M.R. Civ. P. 56 and M.R. Civ. P. 7 within twenty-one days of the date of this order. Subsequent briefing shall proceed pursuant to the time limits established in M.R. Civ. P. 7. Only the portions of the Motions to Dismiss filed by these entities which are directed at the state law tort claims from which these entities may immune pursuant to the MTCA are converted to motions for summary judgment. These entities' Motions to Dismiss with respect to non-tort claims will still be discussed in the subsequent sections as necessary.

2. Governmental Employee Immunity

Because the BBO and Judicial/MCILS employee-Defendants asserted governmental employee immunity as a defense, the relevant legal background is provided first in order to avoid repeating it extensively throughout this Order. Whereas Maine governmental entities are granted the broad immunity discussed above, "liability is the rule and immunity the exception" when it comes to employees of governmental entities. *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 20, 145 A.3d 1030. Under the MTCA, an employee is defined as "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including elected or appointed officials . . . ." 14 M.R.S. § 8102(1). Among other immunities provided in the MTCA, employees of governmental entities are absolutely immune from liability for "[u]ndertaking or failing to undertake any judicial or quasi-judicial act," *id.* § 8111(1)(B), "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused," *id.* § 8111(1)(C), and "[p]erforming or failing to perform any prosecutorial function involving civil, criminal or administrative enforcement . . . ," *id.* § 8111(1)(D).

The law is most thoroughly developed in Maine with respect to discretionary function

12

immunity. Discretionary function absolute immunity applies as long as the "discretionary act is *reasonably encompassed* by the duties of the governmental employee" and is "available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties."[11] *Id.* § 8111(1) (emphasis added). On the other hand, discretionary function immunity does not apply to ministerial acts such that the "questioned conduct has little or no purely governmental content but instead resembles decisions or activities carried on by people generally . . . ." *Rodriguez v. Town of Moose River*, 2007 ME 68, ¶ 22, 922 A.2d 484 (citing *Adriance v. Town of Standish*, 687 A.2d 238, 241 (Me. 1996)).

If "'the duties of the government employee in question' are not clear, [the Court uses] a four[-]factor test . . . to determine whether the employee's actions were encompassed within the discretionary function immunity." *Gove v. Carter*, 2001 ME 126, ¶ 14, 775 A.2d 368. Those four factors are as follows:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?
>
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
>
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
>
> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

---

[11] The Legislature amended the MTCA in 1988 to include the "reasonably encompassed" language specifically "to clarify that an employee does not need specific written authorization by rule or statute, in order for discretionary immunity to apply." *Grossman v. Richards*, 1999 ME 9, ¶ 5, 722 A.2d 371. By doing so, the Legislature's intent was for "discretionary immunity [to] exist whenever the activity in question is in fact discretionary and is important to the functioning of the governmental activity involved." L.D. 2443, Statement of Fact, at 16 (113th Legis. 1988).

13

*Darling,* 535 A.2d at 426. "The first, second, and fourth factors help determine whether the governmental employee was performing or failing to perform an official function or duty. The third factor helps determine whether that function or duty was discretionary in nature, as opposed to merely ministerial." *Carroll v. City of Portland,* 1999 ME 131, ¶ 7, 736 A.2d 279. If the Legislature clearly provides the duties of the employee in a statute and the plain language of the statute is clear, then the Court does "not invoke the aid of the four factors to guide [the] analysis." *Gove,* 2001 ME 126, ¶ 14, 775 A.2d 368.

Further, the Law Court has explicitly stated that the "bad faith" provision in 14 M.R.S. § 8111(1)(E),[12] which negates intentional act immunity, does not apply to the absolute immunities in subsections (A) through (D), including discretionary function immunity. *See Grossman,* 1999 ME 9, ¶ 9, 722 A.2d 371 ("the 'bad faith proviso' of subparagraph E does not apply to the remainder of section 8111(1)"). However, "discretionary function immunity does not extend to actions 'that so clearly exceed the scope of the official's authority that the official cannot be said to be acting in an official capacity.'" *Doe v. Graham,* 2009 ME 88, ¶ 19, 977 A.2d 391 (quoting *Selby v. Cumberland Cty.,* 2002 ME 80, ¶ 6 n.5, 796 A.2d 678). As long as the decisions are made in furtherance of a governmental program or policy, the governmental actor is shielded by the discretionary function immunity in the MTCA, even if the discretion is abused. *Id.*

When distinguishing between a discretionary act which is entitled to immunity and a

---

[12] Neither the BBO Defendants nor the Judicial/MCILS Defendants raised 14 M.R.S. § 8111(1)(E)—intentional act immunity—as a ground for immunity in the present case. The Court only mentions it here because Plaintiff spent a considerable portion of his Response to the Defendants' respective Motions to Dismiss arguing the Defendants could not rely on intentional act immunity, when in fact they had not done so. Plaintiff seemingly conflates intentional act immunity with discretionary act immunity when he states "[the] court will not even reach the merits of the 4-part test for [the discretionary function] immunity exception protection for Defendants as their actions were done in bad faith." (Pl.'s Resp. to Mots. to Dismiss ¶ 50.) In fact, the opposite is true. If the requirements of the four-part test are met, then discretionary immunity applies and there is no need to apply intentional act immunity. As noted above, the Court does not reach the four-part test for discretionary function immunity when the Legislature has clearly defined the duties of the employee in a statute, not when there are allegations of "bad faith." The "bad faith" exception to immunity in 14 M.R.S. § 8111(1)(E) does not apply to the absolute immunities in 14 M.R.S. §§ 8111(1)(A)-(D), including the discretionary function absolute immunity. *See Grossman,* 1999 ME 9, ¶ 9, 722 A.2d 371.

14

ministerial act that is not entitled to immunity, the Law Court has noted "[a] *discretionary* act requires judgment or choice, whereas a *ministerial* act is mandatory and requires no personal judgment or choice." *Carroll*, 1999 ME 131, ¶ 9, 736 A.2d 279. As the United States Supreme Court previously stated when analyzing the Federal Tort Claims Act, "[w]here there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." *Dalehite v. United States*, 346 U.S. 15, 36 (1953).

Over the years, the Law Court has analyzed different scenarios in cases that have come before it and provided a general roadmap as to what types of decisions or acts are or are not entitled to discretionary function immunity.[13] For example, when a corrections officer decided to close a cell door which incidentally severed the finger of a prisoner, the Law Court determined this was a discretionary decision which was related to the legitimate governmental function of management and care of prisoners. *Roberts v. State*, 1999 ME 89, ¶¶ 9-10, 731 A.2d 855. Along the same lines, correctional officers' "actions in setting policies, training and supervising personnel, and taking precautions to protect inmate safety are protected by discretionary immunity." *Erskine v. Comm'r of Corr.*, 682 A.2d 681, 686 (Me. 1996). Additionally, the Law Court has also found

> [a] police officer's decision to initiate and conduct a high speed chase [to constitute] a discretionary decision and act related to the legitimate governmental function of law enforcement in *Selby*, 2002 ME 80, ¶ 10, as did a police dispatcher's failure to inform officers that a person was suicidal in *Doucette v. City of Lewiston*, 1997 ME 157, 16, 697 A.2d 1292, 1294, an officer's decision to respond in an emergency manner to a particular complaint in *Norton v. Hall* . . . , 2003 ME 118 ¶ 7, 834 A.2d 928, 931, and an

---

[13] Discretionary function immunity is applicable to both a governmental entity in the rare instance when it has waived its immunity, *see* 14 M.R.S. § 8104-B(3), and when a governmental employee is sued, *see id.* § 8111(1)(C). However, the analysis is the same for both forms of discretionary immunity. *See Tolliver v. DOT*, 2008 ME 83, ¶ 50 n.12, 948 A.2d 1223 (Alexander, J., concurring).

> officer's decision not to give a passenger of an arrested person a ride home in *Moore v. City of Lewiston*, 596 A.2d 612, 616 (Me. 1991). A Department of Human Services caseworker's decision to not tell prospective foster parents that the foster child they were adopting had made false sexual abuse claims against foster parents in the past was a discretionary function. *Polley v. Atwell*, 581 A.2d 410, 413 (Me. 1990).

*Day's Autobody. Inc. v. Town of Medway*, No. BANSCCV-2013-156, 2015 WL 8484348, at *3 (Me. Super. Mar. 5, 2015). The Law Court's determinations of when certain actions qualify for the protections of discretionary immunity seemingly turn on the issue of whether the challenged actions "[were] associated with a plan or policy developed at a high level of government" and whether they involved "discretionary decisions that were integral to the accomplishment of a uniquely governmental policy or program." *Tolliver*, 2008 ME 83, ¶¶ 19-20, 948 A.2d 1223.

### a. BBO Defendants' Motion to Dismiss

As an initial matter, the Court notes that Plaintiff pleaded no factual information whatsoever detailing what exactly Jacqueline Rogers did to harm Plaintiff. Despite this absence—either by way of naming "All" Defendants in a count or by specifically listing Rogers by name—Plaintiff is attempting to hold her liable for eleven state law tort claims, violation of MUTPA, and violation of RICO. Despite that, the only two times Jacqueline Rogers' name even appears in the FAC is in the initial paragraph listing all of the named Defendants, and in the heading of Count III. However, Count III specifically complains of Plaintiff losing his court-appointed work. Jacqueline Rogers works for the BBO and Plaintiff pleaded no facts at all to explain how she could have any effect on the decision to cease giving Plaintiff court-appointed work. Nor has Plaintiff alleged any facts constituting wrongful conduct on Jacqueline Rogers' part at all for which she should be held liable. It "appear[s] beyond doubt that [Plaintiff] is entitled to no relief under any set of facts that might be proven in support of [his] claim[s]"

16

against Jacqueline Rogers because he has not pleaded anything Jacqueline Rogers did from which the Court could accept as true and draw reasonable inferences from. *Dragomir*, 2009 ME 51, ¶ 15, 970 A.2d 310 (citations and quotations omitted). Accordingly, Counts I, III, IV, V, VI, VIII, IX, X, XII, XIII, IXX [sic], XX, and XXI as they pertain to Jacqueline Rogers are dismissed, thus the BBO Defendants' Motion to Dismiss with respect to Jacqueline Rogers is **GRANTED**.

Plaintiff asserts Counts I, IV, V, VI, VIII, IX, X, XII, XIII, IXX [sic], XX, and XXI against all BBO Defendants. He asserts Counts III, XI, and XXV against the BBO and J. Scott Davis. Because the issue of whether or not the BBO is immune from suit on the tort claims is being converted to a motion for summary judgment, this section will discuss the immunity arguments of Bar Counsel J. Scott Davis and Deputy Bar Counsel Aria Eee. Plaintiff has described over the course of almost 400 paragraphs of the FAC complaints against the Defendants in this case, many of which are directed at Davis and Eee. The information contained within these paragraphs explains the allegedly actionable conduct in great detail. Despite Plaintiff's complaints about Davis's and Eee's actions, they are immune from Plaintiff's state law tort claims under the MTCA and the facts giving rise to the existence of this immunity are contained within the four corners of Plaintiff's FAC and Justice Brennan's November 21, 2016, Order which has merged into the pleadings pursuant to the *Moody* exception.

Plaintiff's chief complaints against Davis and Eee essentially distill down to allegations that both zealously prosecuted disciplinary complaints in BBO proceedings against Plaintiff in bad faith and did not dismiss those grievance complaints outright when they should have, due to a lack of merit to the grievance complaints. (*See, e.g.,* Pl.'s Amnd. Compl. ¶¶ 10, 13-17, 76-79, 99, 106, 167-69, 178, 180-81, 295-97.) Plaintiff made it clear in his FAC that he felt aggrieved

17

by the disciplinary proceedings conducted against him by Davis and Eee. Despite all of these allegations about Davis's and Eee's actions during these disciplinary proceedings, the Court finds their actions to be of the type that are protected both by the discretionary function immunity and the prosecutorial immunity provided to government employees pursuant to the MTCA.

### i. Discretionary Function Immunity

While there is no statute detailing the duties of Bar Counsel J. Scott Davis and Deputy Bar Counsel Aria Eee which would render the four-factor discretionary immunity test unnecessary, the Maine Bar Rules do detail those individuals' duties and responsibilities in such a way as to guide the Court in applying the four-factor test. Each portion of the test is analyzed in turn below. The four-factor test is listed in Motions to Dismiss Section I(A)(2), *supra*.

The Maine Bar Rules explicitly state that the Judicial Branch of the State of Maine has a clear policy or objective, and that policy or objective is "to encourage and promote competent and ethical practice by members of the Maine Bar, and to make these standards known to members of the public, so that they may have confidence in the legal profession in Maine." M. Bar R. Preamble. The BBO "is a quasi-judicial agent of the [Supreme Judicial] Court" and is responsible for the regulation of the legal profession in Maine. *See id.* 1(a), 12. The BBO has "the . . . powers and duties . . . to enforce attorney compliance with these Rules, the procedures and regulations adopted thereunder, and the Maine Rules of Professional Conduct . . . ." *Id.* 1(h)(3). The enforcement of attorney compliance with the Maine Bar Rules and the Maine Rules of Professional Conduct is carried out by Bar Counsel and Deputy Bar Counsel. *See id.* 2.

The prosecution of bar complaints by Bar Counsel and Deputy Bar Counsel against an attorney licensed in Maine involves a basic governmental policy or objective. The governmental

18

policy or objective is to ensure the legal profession in Maine operates as ethically and competently as possible. Prosecuting bar complaints against individuals who allegedly are not living up to these standards is necessary for the Judicial Branch of the State of Maine to keep the legal profession operating ethically and competently. The Court finds the answer to the first question to be in the affirmative.

In the same vein, prosecuting bar complaints against attorneys is essential to "encourage[ing] and promot[ing] competent and ethical practice by members of the Maine Bar." *Id.* Preamble. If the BBO and, by extension, Bar Counsel and Deputy Bar Counsel, did not enforce the Maine Bar Rules and the Maine Rules of Professional Conduct against attorneys who allegedly are not following those rules, then that governmental policy or objective would not be realized. The answer to the second question is also in the affirmative.

The third question is the most important to the discretionary immunity analysis. While the first, second, and fourth questions help to determine whether or not the employee was performing an official duty, "[t]he third factor helps determine whether that function or duty was discretionary in nature, as opposed to merely ministerial." *Carroll*, 1999 ME 131, ¶ 7, 736 A.2d 279. As noted, the State of Maine Judicial Branch has a policy or objective of "encourag[ing] and promot[ing] competent and ethical practice by members of the Maine Bar, and to make these standards known to members of the public, so that they may have confidence in the legal profession in Maine." M. Bar R. Preamble. This policy or objective is implemented by the BBO and, by extension, Bar Counsel and Deputy Bar Counsel. *See id.* 1(a), 1(h)(3), 2.

The very text of the Maine Bar Rules makes it clear Bar Counsel and Deputy Bar Counsel are required to exercise basic policy evaluation, judgment, and expertise when performing the prosecutorial functions on behalf of the Supreme Judicial Court and the BBO. In

19

performing these prosecutorial functions, they must, among other duties, "*evaluate* all information coming to the attention of the office of Bar Counsel to *determine* whether such information concerns a lawyer subject to the jurisdiction of the Board," "*investigate* all information coming to the attention of the office of Bar Counsel that, if true, would be grounds for discipline, and to *investigate* all facts pertaining to petitions for reinstatement," "*make referrals* to the Central Intake Office, to issue stays, dismiss complaints, recommend dismissals with a warning, *refer* respondent to the Alternatives to Discipline Program pursuant to Rule 13(c), or file formal charges with respect to each matter brought to the attention of the Board," and "prosecute before Grievance Commission panels, the Board, and/or the Court any *appropriate* discipline and reinstatement proceedings . . . ." *Id.* 2(b)(1)-(4) (emphasis added). Evaluating information coming to the attention of the BBO would require Bar Counsel and Deputy Bar Counsel to engage in evaluating whether the allegations rise to the level of running afoul of the State of Maine Judicial Branch policy of "encourag[ing] and promot[ing] competent and ethical practice by members of the Maine Bar . . . ." *Id.* Preamble.

Determining whether such information necessitates referring to the Central Intake Office, or issuing a stay, or dismissing a complaint, or recommending a dismissal with a warning, or referring an attorney to ADP, or filing formal charges requires Bar Counsel and Deputy Bar Counsel to weigh policy considerations and utilizing the expertise they have with respect to pursuing the appropriate course of action for the specific conduct complained of in each instance. Put another way, Bar Counsel and Deputy Bar Counsel certainly must exercise policy judgment when making a determination as to the proper path to follow when information of potential attorney misconduct or violation of ethical rules is brought to their attention. Further, Bar Counsel and Deputy Bar Counsel must continue to make these policy judgments when pursuing

20

bar complaints all the way through to a Single Justice of the Supreme Judicial Court because such actions could result in the ultimate sanction of disbarment in accordance with M. Bar R. 13(g)(4). Because of the seriousness of disbarment, determining what conduct rises to the level that threatens the Judicial Branch policy of ethical and competent practice by attorneys requires Bar Counsel and Deputy Bar Counsel to make serious policy evaluations that require a certain expertise. This type of decision making is *not* the type that "has little or no purely governmental content but instead resembles decisions or activities carried on by people generally . . . ." *Rodriguez*, 2007 ME 68, ¶ 22, 922 A.2d 484. Prosecuting bar complaints against attorneys charged with violating the Maine Rules of Professional Conduct instead is "integral to the accomplishment of [the] uniquely governmental policy or program" of regulating the legal profession which was developed by the Supreme Judicial Court of Maine through the Maine Bar Rules. *Cf. Tolliver*, 2008 ME 83, ¶¶ 19-20, 948 A.2d 1223. The answer to the third question must also be yes.

Lastly, the answer to the fourth question of the discretionary function immunity test is also in the affirmative because the Maine Bar Rules grant Bar Counsel and Deputy Bar Counsel[14] the power to "perform all prosecutorial functions on behalf of the Court and the [BBO] . . . ." *Id.* 2(b). These prosecutorial powers include "prosecut[ing] before Grievance Commission panels, the [BBO], and/or the Court any appropriate discipline . . . proceedings . . . ." *Id.* 2(b)(4). Davis and Eee unquestionably possess the requisite lawful authority and duty to prosecute bar complaints against Plaintiff.

Plaintiff's main contentions are that Bar Counsel J. Scott Davis and Deputy Bar Counsel Aria Eee both zealously prosecuted disciplinary complaints in BBO proceedings against Plaintiff

---

[14] The BBO has the discretion to appoint Deputy Bar Counsel as necessary to work with Bar Counsel. *See* M. Bar R. 2(a).

21

in bad faith and did not dismiss those grievance complaints outright when they should have, due to a lack of merit to the grievance complaints. (*See, e.g.,* Pl.'s Amnd. Compl. ¶¶ 10, 13-17, 76-79, 99, 106, 167-69, 178, 180-81, 295-97.) However, as reviewed in the preceding paragraphs, making such decisions as to whether or not to dismiss grievance complaints, or to take a grievance complaint before the Grievance Commission, or even the manner in which to conduct a prosecution in front of the Grievance Commission or Single Justice are discretionary decisions. Plaintiff has alleged Davis and Eee made all of the decisions and pursued these actions in bad faith, which the Court must accept as true.[15] Thus, for the purposes of this Order, the Court assumes Davis and Eee conducted these BBO proceedings against Plaintiff in complete and utter bad faith. Even assuming Davis and Eee had it in for Plaintiff and pursued meritless bar complaints, as governmental employees subject to the protections of the MTCA, Davis and Eee are entitled to the protections of the absolute immunity of performing discretionary functions. The allegations of bad faith do not affect this absolute immunity. *See Grossman*, 1999 ME 9, ¶ 9, 722 A.2d 371. Further, it cannot be said these actions by Davis and Eee—even if they abused their discretion and acted in bad faith—clearly exceeded the scope of their authority so as to lose the protections of discretionary function immunity because they were done in furtherance of a governmental program or policy. *Cf. Graham*, 2009 ME 88, ¶ 19, 977 A.2d 391.

### ii. Prosecutorial Immunity

Although Davis's and Eee's prosecution of bar complaints against Plaintiff is protected by discretionary function immunity, each is alternatively entitled to immunity pursuant to 14 M.R.S. § 8111(1)(D) for performing prosecutorial functions. As noted in Motions to Dismiss Section I(A)(2), *supra*, the law of governmental immunity is most developed with respect to

---

[15] It is debatable whether Plaintiff has included sufficient *facts* in his FAC to support the bad faith allegation—as opposed to his unflattering opinions and conclusory characterizations of the Defendants' behavior. For purposes of this analysis, however, the Court is assuming that bad faith has been properly pleaded.

22

discretionary function immunity. The Law Court has not addressed the issue of whether or not the prosecutorial immunity provided to governmental employees under the MTCA shields Bar Counsel and Deputy Bar Counsel from suit because of their actions in prosecuting an attorney discipline action. However, many other courts have addressed the issue and have found employees who prosecuted attorney discipline actions to be entitled to prosecutorial immunity. Although other courts faced with the issue generally did so in the context of claims for monetary damages pursuant to 42 U.S.C. § 1983, the same reasoning applies here for determining whether those prosecuting attorney discipline actions are entitled to prosecutorial immunity.

One reason other courts have applied prosecutorial immunity to those prosecuting attorney discipline actions is that attorney discipline actions tend to be analogous to judicial proceedings. For example, prosecutors generally are immune from being sued for money damages in connection with judicial proceedings, and "[t]his prosecutorial immunity extends to state bar officials performing a disciplinary role. Deciding whether to bring a disciplinary case against a lawyer is a core prosecutorial function protected by absolute immunity." *Myers v. North Carolina*, No. 5:12–CV–714–D, 2013 WL 4456848, at *4 (E.D.N.C. Aug. 16, 2013), *aff'd sub nom. Myers v. Bizzell*, 673 Fed. Appx. 310 (4th Cir. 2016). Other courts have focused on the public interest in having the public protected from attorneys who might be unfit to practice law, and this "important public interest justifies the broad protection afforded bar counsel . . . [, thus bar counsel] is protected by absolute prosecutorial immunity." *Pak v. Ridgell*, 2011 WL 3320197, at *8 (D. Md. Aug. 1, 2011), *aff'd sub nom. Hekyong Pak v. Ridgell*, 476 Fed. Appx. 750 (4th Cir. 2012). Numerous other courts have also determined those prosecuting attorney discipline actions are entitled to prosecutorial immunity when those who were subject to the attorney discipline proceeding turned around and sued bar counsel for money damages. See

23

*Whitner v. Coggiola*, No. 3:12-1876-CMC-JDA, 2012 WL 4051121, at *4 (D.S.C. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 4051185 (D.S.C. Sept. 13, 2012), *aff'd*, 508 Fed. Appx. 195 (4th Cir. 2013), and cases cited therein for greater detail of courts which have applied prosecutorial immunity to disciplinary counsel or bar counsel.

Here, similar reasoning applies for Davis's and Eee's entitlement to prosecutorial immunity. First, the various BBO proceedings before the Grievance Commission and a Single Justice of the Supreme Judicial Court provide similar procedural safeguards as those present in judicial proceedings such as a criminal prosecution. While "[d]isciplinary proceedings before a Grievance Commission panel are neither civil nor criminal . . . [and] the Maine Rules of Civil Procedure and the Maine Rules of Evidence do not apply," M. Bar R. 14(a)(1)-(2), in a formal charges hearing before the Grievance Commission, "Bar Counsel and the respondent may present evidence and may cross-examine witnesses. The respondent may be represented by counsel. The testimony of witnesses shall be by oath or affirmation administered by the panel chair." *Id.* 13(e)(7)(C). Thus, formal charges hearings before the Grievance Commission bear a striking resemblance to a traditional judicial proceeding.

Further, in an attorney discipline action before a Single Justice of the Supreme Judicial Court, the respondent-attorney is served with a document giving notice of the allegations and a summons, *id.* 13(g)(1), the parties engage in discovery, *id.* 13(g)(3), and either party may appeal the Single Justice's Judgment, *id.* 13(g)(4). In addition to those protections, "disciplinary proceedings before a Single Justice or the Court shall be governed by the Maine Rules of Civil Procedure and the Maine Rules of Evidence." *Id.* 14(b)(1). Not only are attorney discipline proceedings in the BBO similar to other judicial proceedings, but the public interest in having an ethical and competent bar for the public's protection necessitates entitling Bar Counsel and

24

Deputy Bar Counsel to do their jobs of prosecuting potentially meritorious bar complaints without fear of being sued for damages by a dissatisfied attorney subject to a disciplinary proceeding.

Plaintiff's FAC alleges Davis and Eee prosecuted these bar complaints against Plaintiff in bad faith. Even though the Court is required to accept this as true at this stage of the proceeding, it does not affect the analysis because "the 'bad faith proviso' in subparagraph E does not apply to the absolute immunity that subparagraphs A through D provide." *Grossman*, 1999 ME 9, ¶ 10, 722 A.2d 371. Davis and Eee are still entitled to prosecutorial immunity even if they prosecuted the bar complaints against Plaintiff in bad faith.

### iii. Conclusion

Based on the foregoing discussion, Davis and Eee are entitled to discretionary function immunity and prosecutorial immunity. Counts I, IV, V, VI, VIII IX, X, XII, IXX [sic], and XX against Aria Eee are dismissed on the basis of the immunities provided by the MTCA, and the BBO Defendants' Motion to Dismiss with respect Aria Eee and those claims is **GRANTED**. Counts I, III, IV, V, VI, VIII, IX, X, XI, XII, IXX [sic], XX, and XXV against J. Scott Davis are also dismissed on the basis of the immunities provided by the MTCA, and the BBO Defendants' Motion to Dismiss with respect J. Scott Davis and those claims is **GRANTED**.

### b. Judicial Defendants' Motion to Dismiss

Because the allegations and related legal analysis related to the various employees of the Judicial Branch and MCILS varies, the Court will address each in turn. However, the analysis related to the claimed witness privilege of the individual Judicial/MCILS Defendants who testified at the BBO proceedings—and allegedly made defamatory statements about Plaintiff in the process—is uniform, so the Court will address that all at once at the end of Motions to

25

Dismiss Section I(A)(2)(d), *infra*.

i. Jurist Defendants (Judge Nancy Carlson, Judge Maria Woodman, Justice Lance Walker)

By way of naming "All" Defendants—but without pleading specific factual information regarding any Defendants—or by naming the particular Defendants specifically, Plaintiff has asserted Counts I, II, IV, V, VI, VII(1), VII(2), VIII, IX, X, XII, XIII, IXX [sic], XX, XXI, and XXV against Judge Carlson, Counts I, IV, V, VI, VII(2), VIII, IX, X, XII, XIII, IXX [sic], XX, XXI, and XXV against Judge Woodman, and Counts I, IV, V, VI, VIII, IX, X, XII, XIII, IXX [sic], XX, XXI, and XXV against Justice Walker. The following factual background is based on all well-pleaded allegations in the FAC and construed most favorably for Plaintiff to form all reasonable inferences that can be drawn from those facts, as the Court is required to do at this stage of the proceeding.

Judge Carlson presided over a small claims matter in which Plaintiff attempted to recover a referral fee Plaintiff believed he was owed from another attorney, Stephen Chute. (Pl.'s Amnd. Compl. ¶ 107.) During the small claims case, Judge Carlson did not apply the small claims court procedural rules, and she instead erroneously applied the rules of civil procedure and evidence. (*Id.* ¶ 114, 128, 131-133.) As a result of her interactions with Plaintiff during the small claims case, Judge Carlson ostensibly filed a bar complaint against him. (*Id.* ¶ 138.) During the pendency of the BBO proceedings regarding the several grievance complaints filed against Plaintiff, Judge Carlson provided purportedly false and defamatory statements and testimony to the BBO.[16] (*Id.* ¶¶ 35-42.) Additionally, Judge Carlson discontinued Plaintiff's criminal court

---

[16] The statements Judge Carlson made which Plaintiff alleges are false and defamatory include the following: "[Plaintiff] has absolutely no understanding about procedure of law." (*Id.* ¶ 35.) Plaintiff would come into court with his father but would not pay attention and would instead sit in the back of the courtroom texting on his phone. (*Id.* ¶ 36.) Plaintiff would "cram" before appearing in court by questioning other attorneys on how to proceed. (*Id.*

appointments and consistently recused herself from presiding over cases in which Plaintiff was working. (*Id.* ¶ 139.)

Plaintiff's allegations pertaining to Judge Woodman center on her filing a grievance complaint with the BBO against Plaintiff and allegedly defamatory statements she made about Plaintiff during the BBO proceedings. For example, Judge Woodman made "embellished, false and unwarranted allegations" against Plaintiff. (*Id.* ¶¶ 33-34.) Plaintiff alleges Judge Woodman filed her grievance complaint against Plaintiff with the BBO "without alleging substantial misconduct that would give rise to a violation of the Maine Rules of Professional Conduct . . . ." (*Id.* ¶ 70.) Further, Judge Woodman was also partially responsible for Plaintiff no longer receiving court-appointed work. (*Id.* ¶ 139.)

Lastly, generously read, Plaintiff's FAC supplies the Court with very few well-pleaded factual allegations as to the alleged tortious conduct committed by Justice Walker. At best, Plaintiff's FAC alleges that Justice Walker made slanderous statements about Plaintiff while testifying during the BBO proceedings against Plaintiff and that he conspired with the other jurist Defendants to make such statements. (*Id.* ¶¶ 251, 291.) Plaintiff alleges that Justice Walker knowingly made these false reports and statements to the BBO proceedings in an attempt to create a false impression about Plaintiff. (*Id.* ¶ 357.)

As discussed in Motions to Dismiss Section I(A)(2), *supra*, "employees of governmental entities [are] absolutely immune from personal civil liability for . . . [u]ndertaking or failing to undertake any judicial or quasi-judicial act . . . ." 14 M.R.S. § 8111(1)(B). Judge Carlson, Judge Woodman, and Justice Walker are employees of the Judicial Branch of the State of Maine, which makes them governmental employees under the MTCA. *See id.* §§ 8102(1)-(2), (4). Judges, and

¶ 39.) Plaintiff would ask questions of other attorneys during proceedings. (*Id.* ¶ 40.) "If there's an objection [Plaintiff] can't respond; zero understanding of that." (*Id.* ¶ 41.) Plaintiff would "fight too hard" in traffic cases. (*Id.* ¶ 42.)

27

justices are appointed officials acting on behalf of governmental entities. *See, e.g.,* 4 M.R.S. § 157(1); 4 M.R.S. § 101.

While the MTCA displaced the common law of immunity in Maine, the theoretical underpinnings of judicial immunity are still particularly relevant to the judicial immunity which exists under the MTCA. This is because

> [t]he absolute immunity of a judge from civil suits for damages arising from his judicial acts is well settled. . . . This immunity applies even when the judge is accused of acting maliciously and corruptly . . . . [The judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Richards v. Ellis*, 233 A.2d 37, 38-39 (Me. 1967) (citations omitted). Federal courts have focused on only two instances in which judicial immunity can be overcome: "(1) functions not 'normally performed by a judge' and outside his or her 'judicial capacity;' or, (2) 'judicial actions taken in the clear absence of all jurisdiction . . . .'" *Marcello v. Maine*, 464 F. Supp. 2d 38, 43 (D. Me. 2006) (citations omitted). Neither is present here.

Of the material factual allegations specifically directed at Judge Carlson, most relate to Judge Carlson's perceived procedural errors during the course of Plaintiff's small claims case before her. (Pl.'s Amnd. Compl. ¶¶ 107-38.) Presiding over a small claims matter as a District Court judge can hardly be described as anything other than a judicial act normally performed by a judge, for which the MTCA provides absolute immunity. *See* 14 M.R.S. § 8111(1)(B). Even if Judge Carlson did not apply the proper procedural rules to Plaintiff's small claims case—as the Court is required to assume on this Motion to Dismiss—she is absolutely immune from liability on Plaintiff's tort claims pursuant to 14 M.R.S. § 8111(1)(B). As the Law Court plainly articulated, "[the judge's] errors may be corrected on appeal . . . ." *Richards*, 233 A.2d at 38-39.

28

The FAC is barren of any facts indicating Plaintiff attempted to have the alleged errors in the small claims proceeding corrected on appeal.[17]

To the extent Plaintiff advances allegations claiming Judge Carlson, Judge Woodman,[18] and Justice Walker are liable in tort for reporting to the BBO and participating in BBO proceedings, and then subsequently recusing themselves because of these reports to the BBO, those claims are barred by judicial immunity. Part and parcel to being a judge or justice of the Maine Judicial Branch is "comply[ing] with the law and the Maine Code of Judicial Conduct." M. Code Jud. Conduct R. 1.1. Compliance with the law and the Maine Code of Judicial Conduct requires

> [a] judge having knowledge that a lawyer has committed a violation of the Maine Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the Board of Overseers of the Bar and any other appropriate authority including disciplinary boards of other jurisdictions in which the lawyer is admitted to practice. . . . A judge who receives

---

[17] In the small claims context, "[a]n aggrieved party may appeal from a judgment of the District Court . . . to the Superior Court . . . . The time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from . . . ." M.R.S.C.P. 11(a). It does not appear Plaintiff decided to take advantage of his right to appeal. Further, the comments to the Maine Rules of Professional Conduct give clear guidance for attorneys when faced with a similar type of situation Plaintiff allegedly found himself in:

> The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

M.R. Prof. Conduct 3.5 cmt. (4).

[18] Plaintiff's contention that Judge Woodman was without the requisite authority at the time she made her complaint to the BBO due to her position as a Family Law Magistrate is meritless. (Pl.'s Amnd. Compl. ¶¶ 88-106.) Family Law Magistrates—or, Family Case Management Officers, as they were called when the position was first created—have always been governed by the Maine Code of Judicial Conduct. *See* P.L. 1997, ch. 269, § 1. Although the Maine Code of Judicial Conduct was revised in 2015 (after Judge Woodman made her complaint in 2014), current "Rule 2.15 is similar to 1993 Canon 3(D)(1)-(3)," which was in effect when Judge Woodman reported Plaintiff to the BBO in 2014. M. Code Jud. Conduct R. 2.15 Advisory Notes, July 2015; M. Code Jud. Conduct 3(D)(3) (repealed and replaced September 1, 2015).

29

> information indicating a substantial likelihood that a lawyer has committed a violation of the Maine Rules of Professional Conduct should take appropriate action. *Acts or omissions of a judge, in the discharge of disciplinary responsibilities required or permitted by sections A through D of this rule, are a part of a judge's judicial duties and shall be absolutely privileged, and no civil actions predicated thereon may be instituted against the judge.*

*Id.* 2.15(B), (D), (E) (emphasis added). "A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies." *Id.* 2.16(A). Reporting Maine Rules of Professional Conduct violations the BBO and participating in the proceedings are judicial acts for which Judge Carlson, Judge Woodman, and Justice Walker are judicially immune.

Further, the Maine Code of Judicial Conduct provides that "[a] judge shall disqualify or recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.* 2.11(A). Even though the Maine Code of Judicial Conduct does not require a judge to recuse oneself upon reporting an attorney to the BBO, *see id.* 2.15(B), "[t]he decision whether to recuse clearly 'involves the kind of discretionary decision making that the doctrine of judicial immunity is designed to protect . . . .'" *Chavez v. City of Albuquerque*, No. 99-2359, 2000 U.S. App. LEXIS 25244, at *11 (10th Cir. Oct. 10, 2000) (citations omitted). In making reports to the BBO and participating in BBO proceedings, and then subsequently recusing themselves from presiding over cases on which Plaintiff was an attorney, Judge Carlson, Judge Woodman, and Justice Walker were performing judicial acts and are thus immune from suit under the MTCA pursuant to 14 M.R.S. § 8111(1)(B).

### ii. Administrative Defendants (Elizabeth Maddaus, Laureen Pratt, Darlene Richards)

While extensively pleading allegations against other Defendants, Plaintiff's allegations against Maddaus, Pratt, and Richards are minimal in comparison. Plaintiff's allegations against Maddaus, Pratt, and Richards stem from the alleged wrongful cessation of assigning Plaintiff

30

court-appointed criminal work and for allegedly making false statements about Plaintiff in BBO proceedings. (Pl.'s Amnd. Compl. ¶¶ 239, 252, 277-79.) However, despite the narrow factual allegations against Maddaus, Pratt, and Richards, either by way of naming "All" Defendants or naming Maddaus, Pratt, and Richards specifically, Plaintiff is attempting to hold each liable for twelve state law tort claims, violation of MUTPA, and violation of RICO. Specifically, Plaintiff asserted Counts I, III, IV, V, VI, VII(2), VIII, IX, X, XII, XIII, IXX [sic], XX, and XXI against Maddaus, Pratt, and Richards. To the extent Plaintiff's claims against Maddaus, Pratt, and Richards seek to recover monetary damages for their involvement in withholding court-appointed criminal work from Plaintiff, Maddaus, Pratt, and Richards are shielded by the judicial/quasi-judicial immunity of 14 M.R.S. § 8111(1)(B) from liability in tort. To the extent Plaintiff seeks to recover from Maddaus, Pratt, and Richards for statements they made in BBO proceedings, those statements are absolutely privileged under *Dunbar v. Greenlaw*, 128 A.2d 218 (Me. 1956).

The Court was unable to locate any Law Court cases stating whether or not appointing attorneys to represent indigent defendants is a judicial/quasi-judicial act which would entitle Maddaus, Pratt, and Richards to immunity under the MTCA. Although courts across the country are not unanimous on the issue, the Court finds persuasive the reasoning supplied by other courts in holding court appointments to be judicial/quasi-judicial acts which are subject to immunity. As the Fifth Circuit noted,

> the act of selecting applicants for inclusion on a rotating list of attorneys eligible for court appointments is inextricably linked to and cannot be separated from the act of appointing counsel in a particular case, which is clearly a judicial act, and therefore that the judges' acts at issue in this suit must be considered to be protected by judicial immunity.

*Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 226 (5th Cir. 2009). Quasi-judicial immunity can

31

apply to individuals other than judges: "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges . . . . The extension of immunity to these officials turn[s] on the nature of the function performed, not on the officer's title." *Robinson v. Freeze*, 15 F.3d 107, 108–09 (8th Cir. 1994) (citations and quotations omitted). One court has found "[e]ven when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, . . . that officer's immunity is also available to the subordinate." *Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997).

Maddaus, Pratt, and Richards are employees of the Judicial Branch of the State of Maine, which brings them within the purview of the MTCA. *See* 14 M.R.S. §§ 8102(1)-(2), (4). Plaintiff has alleged Judge Carlson and Judge Woodman directed Pratt and Richards to cease giving Plaintiff court-appointed work and Pratt and Richards followed those directions. (Pl.'s Amnd. Compl. ¶ 278.) Because appointing counsel to represent indigent defendants seemingly is a judicial act, and because Pratt and Richards allegedly stopped giving Plaintiff court-appointed work at the behest of Judge Carlson and Judge Woodman, Pratt and Richards are entitled to quasi-judicial immunity pursuant to 14 M.R.S. § 8111(1)(B). Plaintiff's only allegation against Maddaus amounts to a contention that *if* Pratt and Richards consulted with Maddaus regarding the court appointments, *then* she is liable to the same extent. (*Id.* ¶ 279.) Even though Plaintiff appears to be speculating without definitively alleging that Pratt and Richards may or may not have consulted with Maddaus, Maddaus is immune just the same as Pratt and Richards pursuant to 14 M.R.S. § 8111(1)(B) if she was involved in the decision to stop giving Plaintiff court-appointed criminal work.

   c. MCILS Defendant John Pelletier's Motion to Dismiss

The allegations against Pelletier are not entirely clear in Plaintiff's FAC; Pelletier is only referenced in the heading of Count III with respect to Plaintiff no longer receiving court-appointed work—but the factual allegations within that claim appear to be aimed specifically at the judicial clerks—and Count V relating to the alleged defamation of Plaintiff during the BBO proceedings, which will be discussed in Motions to Dismiss Section I(A)(2)(d), *infra*. (*Id.* ¶¶ 239, 252.) Despite this paucity of factual allegations against Pelletier in Plaintiff's claims for relief, he is attempting to hold Pelletier liable in damages on eleven state law tort claims, as well as violation of MUTPA and RICO. Specifically, by way of naming "All" Defendants or listing Pelletier by name, Plaintiff asserts Counts I, III, IV, V, VI, VIII, IX, X, XII, XIII, IXX [sic], XX, and XXI against Pelletier.

The bulk of the discussion of Pelletier occurs in what is styled as Count XXII, but is really Plaintiff's M.R. Civ. P. 80C petition for review of an administrative action, i.e., Plaintiff's removal from the MCILS' roster of attorneys. This is not a claim for relief and, in reality, is directed against MCILS—not Pelletier—because MCILS is the agency which took the action in question. Plaintiff's actual petition pursuant to M.R. Civ. P. 80C is discussed in great detail in Motions to Dismiss Section I(B)(2), *infra*. However, in an abundance of caution—and assuming the grounds for review in Plaintiff's M.R. Civ. P. 80C petition could be construed as applying to his civil claims for damages—the Court will analyze these in relation to Plaintiff's civil claims for relief against Pelletier.[19]

---

[19] Notably, an individual petitioning for review of an agency action can join the petition for review with independent civil claims for damages, but the Rule requires a specific procedure to be followed. *See* M.R. Civ. P. 80C(i) (emphasis added) ("A party in a proceeding governed by this rule asserting such an independent basis for relief *shall* file a motion no later than 10 days after the petition is filed, requesting the court to specify the future course of proceedings."). Plaintiff did not file a motion requesting this Court to specify the future course of proceedings within ten days of filing his petition, or ever, for that matter. The Law Court has previously noted that failing to file such a motion is fatal to the civil claims for relief. *Fleming v. Comm'r, Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692 ("It does not appear that Fleming complied with the requirement to proceed with a damages claim, but that failure only defeats his claim for damages."). However, as noted above, this Court proceeds on the analysis for the

Plaintiff alleges Pelletier "arbitrarily and capriciously removed Plaintiff from the roster of MCLIS [sic] court-appointed attorneys . . . with no valid justification." (*Id.* ¶ 329.) This decision to remove Plaintiff from the roster was based "on the decision of a panel of the Board of Overseers . . . [which] had been stayed by the Law Court at the time."[20] (*Id.* ¶ 339.) Plaintiff claims he was "[u]ltimately . . . exonerated . . . ."[21] (*Id.* ¶ 342.)

John Pelletier is the Executive Director of MCILS, which is a legislatively-created commission "whose purpose is to provide efficient, high-quality representation to indigent criminal defendants, juvenile defendants and children and parents in child protective cases . . . ." 4 M.R.S. § 1801 (2016). Thus, Pelletier is an employee of a governmental entity within the meaning of the MTCA. *See* 14 M.R.S. §§ 8102(1)-(2), (4). Because Pelletier is an employee of a governmental entity, he is liable unless one of the immunities found in 14 M.R.S. § 8111 applies to his actions. *See Day's Auto Body, Inc.*, 2016 ME 121, ¶ 20, 145 A.3d 1030. The Court finds that Pelletier is entitled to the absolute discretionary immunity granted to governmental employees by 14 M.R.S. § 8111(1)(C), even if Plaintiff's allegations could be reasonably be read to claim Pelletier abused his discretion.

As previously discussed, discretionary function absolute immunity applies as long as the "discretionary act is *reasonably encompassed* by the duties of the governmental employee . . . ." 14 M.R.S. § 8111(1) (emphasis added). Unlike the individual BBO Defendants, Pelletier's

---

damages claims against Pelletier arising out of Plaintiff being removed from the MCILS' roster of attorneys in an abundance of caution.

[20] The Court notes that, while the decision may have been stayed at the time, on May 18, 2016, Justice Gorman found probable cause that the disciplinary proceeding against Plaintiff could result in suspension or disbarment and she directed Bar Counsel to file an Information and proceed as an attorney discipline action pursuant to M. Bar R. 13(g). (J. Gorman Order to File 1.)

[21] However, this contention is not supported by Justice Brennan's November 21, 2016, Order, which has merged into the pleadings pursuant to the *Moody* exception. Notably, Justice Brennan found that "[Plaintiff] engaged in violations of the following Maine Rules of Professional Conduct: 1.1; 1.3; 3.3(a)(3); 3.3(b); 8.4(a); and 8.4(d)." (J. Brennan Order 3.) As a result of the attorney discipline action against Plaintiff pursuant to M. Bar R. 13(g), Plaintiff was suspended from practicing law in Maine for two years, with that suspension being suspended, subject to twenty-eight separate conditions Plaintiff has to comply with. (*Id.* 9.)

34

duties are explicitly defined by statute and the Court does not need to apply the four-factor discretionary immunity test. *See Gove*, 2001 ME 126, ¶ 14, 775 A.2d 368 ("Where . . . the Legislature has explicitly delineated the duties of the government employee in question, [the Court] looks first to the plain language of that statute. If the plain language of that statute answers the issue at hand, [the Court] need not invoke the aid of the four factors to guide [the] analysis."). The Legislature has clearly delineated Pelletier's duties in plain language.

Here, among other duties, Pelletier is tasked with "[e]nsur[ing] that the provision of indigent legal services complies with all constitutional, statutory and ethical standards . . . ." 4 M.R.S. § 1805(1). He must also "supervise compliance with commission standards . . . ." *Id.* § 1805(3). Pelletier is also statutorily authorized to determine "[w]hether an attorney meets the minimum eligibility requirements to receive assignments . . . [and] [w]hether an attorney previously found eligible is no longer eligible to receive assignments . . . pursuant to any commission rule setting forth eligibility requirements . . . ."[22] *Id.* § 1804(3)(J)(1)-(2). In order to be eligible, all attorneys on the MCILS' roster "must be in good standing with the Maine Board of Overseers of the Bar . . . ." 94-649 C.M.R. ch. 002, § 2(1) (2011). These duties are not all that dissimilar from the duties of the governmental employee in *Gove v. Carter*, where the Law Court found the employee's actions to be reasonably encompassed in his duties. *See* 2001 ME 126, ¶¶ 15-16, 775 A.2d 368.

There is no question Pelletier's decision to remove Plaintiff from the roster of MCILS' attorneys was reasonably encompassed within his statutory duties. Part of his duties include determining whether attorneys meet the minimum eligibility standards to represent indigent

---

[22] MCILS is statutorily required to develop an administrative appellate procedure for any decisions of the Executive Director under this section. 4 M.R.S. § 1804(3)(J). Plaintiff concedes he pursued Pelletier's decision to remove Plaintiff from the active roster of MCILS attorneys pursuant to the appellate procedure adopted by MCILS, and MCILS upheld Pelletier's decision. (Pl.'s Amnd. Compl. ¶¶ 329, 332.)

defendants. One of the eligibility requirements is being in good standing with the BBO. Deciding to remove an attorney—who was engaged in ongoing proceedings in front of the BBO in which he was ultimately sanctioned by Justice Brennan who was sitting on behalf of the Supreme Judicial Court—from the roster of active attorneys is reasonably encompassed within his statutorily prescribed duties. To the extent Plaintiff's claims for relief could plausibly be read as an attempt to hold Pelletier liable for removing Plaintiff from the MCILS' roster of attorneys—a decision which was upheld by MCILS after appellate review—they are barred by the absolute discretionary immunity provided by 14 M.R.S. § 8111(1)(C).

d. Statements During BBO Proceedings by Judge Carlson, Judge Woodman, Justice Walker, Elizabeth Maddaus, Laureen Pratt, Darlene Richards, and John Pelletier

Although the Court has decided that the above Defendants are protected by judicial or discretionary act immunity provided by the MTCA, and that these forms of immunity protect some of them from claims arising from their testimony at BBO proceedings, the Court also finds that another form of immunity needs to be discussed. This is important to the analysis if it were decided that testifying at a disciplinary proceeding is not a traditional judicial function that is protected by immunity, or not a discretionary function that would otherwise be protected.

Plaintiff alleges all of the Judicial/MCILS employee-Defendants slandered Plaintiff with their statements and testimony during the BBO proceedings. For instance, Plaintiff alleges Judge Carlson provided several mistruths and embellishments during the BBO proceedings, "imputing misconduct in his job/trade" as an attorney. (Pl.'s Amnd. Compl. ¶¶ 35-42, 251.) Judge Woodman made such allegedly defamatory statements as Plaintiff's "behavior is worsening and on occasion has included some bizarre behavior . . . [such as] throwing items onto the street, outside of the law office . . . [and] nearly crying when he lost his appeal before J. Clifford," and

the "problem [of Plaintiff's conduct as an attorney] has reached a critical level and she believes time is of the essence." (*Id.* ¶¶ 33-34.) With respect to Justice Walker, it appears as though Plaintiff is generally including Justice Walker (by referencing the "jurist Defendants" collectively) in his allegations that he was slandered with false testimony at these proceedings, despite not specifically pleading in his FAC what Justice Walker allegedly said. (*See, e.g., id.* ¶¶ 171, 251.) Plaintiff alleges Maddaus, Pratt, and Richards "defamed Plaintiff by testifying in public proceedings with false slanderous charges." (*Id.* ¶ 252.) John Pelletier is also allegedly liable for "defam[ing] Plaintiff by testifying in public proceedings with false slanderous charges." (*Id.*) Despite this purported defamation of Plaintiff by Judge Carlson, Judge Woodman, Justice Walker, Elizabeth Maddaus, Laureen Pratt, Darlene Richards, and John Pelletier, they are shielded from liability by the absolute privilege afforded witnesses in judicial proceedings by *Dunbar*.

Maine recognizes that "[a] witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto." *Dunbar*, 128 A.2d at 223 (quotations omitted). It does not appear the Law Court has applied the *Dunbar* absolute witness privilege to the quasi-judicial BBO proceedings. As a neighboring jurisdiction pointed out,

> [m]any States afford absolute immunity from civil liability for communications and testimony provided to the State bar discipline authority. The policy underlying the granting of immunity is to ensure a vigorous system of self-regulation of attorneys by protecting those who would complain about a lawyer's conduct against expensive retaliatory suits by the lawyer in response.[23]

---

[23] While the current version of the immunity provision in the Maine Bar Rules does not provide an independent grant of immunity to complainants and witnesses, it does not foreclose the application of other sources of immunity to BBO proceedings, either. *Cf.* M. Bar. R. 12.

37

*Bar Counsel v. Farber*, 985 N.E.2d 1155, 1161 n.6 (2013). The United States District Court for the District of Maine has analyzed Maine law on the issue and determined the Law Court would likely apply the absolute privilege to witnesses testifying in quasi-judicial proceedings, such as ones before the BBO, were the issue to find its way to the Law Court. This Court is persuaded by that analysis. In its ruling, that court focused on the

> safeguards inherent in a quasi-judicial proceeding that limit the impact of any potentially defamatory statements. First, the presiding official or officials presumably have the ability to keep testimony focused on the issue at hand. Additionally, the officials can cut short any unnecessary speech that could be defamatory. While these safeguards are related to the exceptions to the immunity discussed above, in practice these safeguards are distinct because they can be implemented at the time of the testimony in a manner that can limit any damage from a defamatory statement. Another related deterrent is the fact that the subject of the potentially defamatory statement is often present at the quasi-judicial proceeding. The subject of the alleged defamatory statements then may have the opportunity to cross-examine the witness, or to rebut the potentially defamatory statement, or both. These inherent safeguards obviously cannot transform the potentially defamatory statements into harmless speech, but this immediate opportunity to cross-examine or respond can mitigate potential damage to the subject's reputation.

*Rohrbach v. Charbonneau*, No. 99-282-P-C, 2000 U.S. Dist. LEXIS 2778, at *21-22 (D. Me. Mar. 1, 2000).

Each of the safeguards of quasi-judicial proceedings touched upon in *Rohrbach* are present during Grievance Commission proceedings.[24] First, in a formal charges hearing before the Grievance Commission, "[t]he panel chair shall preside at the hearing, and shall have the power to control the course of proceedings and regulate the conduct of those individuals appearing as counsel, parties, or witnesses." M. Bar R. 13(e)(7)(A). Second, the respondent is given the opportunity to be present at the hearing. *Id.* 13(e)(7)(C). Third, and most important,

---

[24] Notably, the BBO "is a quasi-judicial agent of the [Supreme Judicial] Court." M. Bar R. 12.

"the respondent may present evidence and may cross-examine witnesses. The respondent may be represented by counsel." *Id.* Plaintiff—or any counsel representing him—had an opportunity to cross-examine these witnesses who allegedly defamed him and allegedly made false, slanderous statements. The court there noted how a respondent's ability to immediately cross-examine the witnesses on their allegedly defamatory statements provides a strong safeguard against the harm defamatory statements can do. Perhaps even more notable, "[t]he testimony of witnesses shall be by oath or affirmation administered by the panel chair." *Id.* During the court's analysis of *Dunbar*, it pointed to the fact that

> the Maine Law Court, [in] discussing the policy underlying witness immunity, noted that perjury statutes afford a potential remedy for false sworn statements. In other words, even though a witness is immune from civil liability for statements made during the course of testifying, the witness is not immune from criminal prosecution for perjury if false statements are made under oath. Indeed the existence of criminal perjury as an alternative remedy serves as a policy justification for the absolute immunity afforded witnesses.

*Rohrbach*, 2000 U.S. Dist. LEXIS 2778, at *26. Perjury is a criminal offense in Maine. *See* 17-A M.R.S. § 451(1)(A) (2016) ("A person is guilty of perjury if he makes[,] . . . [i]n any official proceeding, a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true."). Thus, if the State so decided, it could institute criminal proceedings against any of the Defendants if they truly perjured themselves during the BBO proceedings. However, this does not remove the privilege afforded witnesses from civil liability.

While Plaintiff has not pleaded in the FAC the actual defamatory and false, slanderous testimony and statements Justice Walker, Maddaus, Pelletier, Pratt, and Richards made during

39

the BBO proceedings,[25] the implication from Plaintiff's FAC is clear that the statements and testimony given at these proceedings related to his performance and ability as an attorney. (*See, e.g.,* Pl.'s Amnd. Compl. ¶¶ 239, 245, 251, 311.) Giving statements and testifying about Plaintiff's performance and ability as an attorney—even if defamatory and falsely slanderous—during a BBO proceeding is certainly in relation to the proceeding being conducted regarding Plaintiff's potential violation of the Maine Rules of Professional Conduct in his capacity as a licensed attorney. Thus, the alleged false and defamatory nature of the statements and testimony is irrelevant. *See Dunbar*, 128 A.2d at 223. The statements and testimony given by Judge Carlson, Judge Woodman, Justice Walker, Elizabeth Maddaus, Laureen Pratt, Darlene Richards, and John Pelletier during the BBO proceedings against Plaintiff are absolutely privileged.

e. Conclusion

Because of the foregoing analyses, Counts I, II, IV, V, VI, VII(1), VII(2), VIII, IX, X, XII, IXX [sic], XX, and XXV against Judge Carlson are barred by judicial immunity pursuant to 14 M.R.S. § 8111(1)(B) and by the witness privilege provided by *Dunbar*, thus her Motion to Dismiss as to those Counts is **GRANTED**. Counts I, IV, V, VI, VII(2), VIII, IX, X, XII, IXX [sic], XX, and XXV against Judge Woodman are also barred by judicial immunity pursuant to 14 M.R.S. § 8111(1)(B) and by the witness privilege provided by *Dunbar*, thus her Motion to Dismiss as to those Counts is **GRANTED**. Counts I, IV, V, VI, VIII, IX, X, XII, IXX [sic], XX, and XXV against Justice Walker are also barred by judicial immunity pursuant to 14 M.R.S. § 8111(1)(B) and by the witness privilege provided by *Dunbar*, thus his Motion to Dismiss as to

---

[25] This in itself is problematic because a "defendant is . . . entitled to know precisely what statement is attributed to him, . . . [and] the words must be proved strictly as alleged." *Picard v. Brennan*, 307 A.2d 833, 835 (Me. 1973) (citations and quotations omitted). Accordingly, "plaintiffs are not entitled to file a lawsuit alleging unspecified instances of defamation and then undertake discovery in the hope that they can find some evidence to substantiate their apparent suspicion that the defendants must have said something derogatory." *Nadeau v. Hunt*, No. CV-05-221, 2006 Me. Super. LEXIS 58, at *19 (Mar. 23, 2006). However, because the Court finds the alleged defamatory statements to be absolutely privileged, this is not relevant in this section of the Order, but will be addressed with regard to the claims against the Lewiston Sun Journal.

40

those Counts is **GRANTED**. Counts I, III, IV, V, VI, VII(2), VIII, IX, X, XII IXX [sic], and XX against Maddaus, Pratt, and Richards are barred by the judicial/quasi-judicial immunity provided by 14 M.R.S. § 8111(1)(B) and by the witness privilege provided by *Dunbar*, thus their Motion to Dismiss as to those Counts is **GRANTED**. Counts I, III, IV, V, VI, VIII, IX, X, XII, IXX [sic], and XX against Pelletier are barred by the discretionary immunity provided by 14 M.R.S. § 8111(1)(C) and by the witness privilege provided by *Dunbar*, thus his Motion to Dismiss as to those Counts is **GRANTED**.

## B. Non-Tort Claims

### 1. MUTPA and RICO

Count XIII of Plaintiff's FAC claims a violation of MUTPA and Count XXI of Plaintiff's FAC alleges a violation RICO, but he has not specified the extent of each Defendants' involvement for either of these claims. The BBO Defendants and the Judicial/MCILS Defendants contend they are immune from Plaintiff's MUTPA and RICO claims. Plaintiff's RICO claim contains a number of general conclusory statements about Defendants' conduct, but has not added any additional well-pleaded factual allegations as to what exactly gives rise to his RICO claim. Indeed, Plaintiff alleges all of the Defendants engaged in the complained of racketeering activity "by their above described acts," which the Court takes to mean as alleging a RICO violation based on the same conduct arising out of their actions as governmental employees that predicated his tort claims which have been subject to extensive discussion throughout this Order. (Pl.'s Amnd. Compl. ¶ 317.) Similarly, Plaintiff's MUTPA claim relies on general conclusory statements, except for the addition of his alleged purchase of goods which purportedly authorizes him to sue under the private remedy section of the statute. It would appear as though Plaintiff is again attempting to recover for alleged tortious conduct through

41

separate statutory schemes. However, notwithstanding the pleading inadequacies the exist with Plaintiff's MUTPA and RICO claims, the Court finds the State of Maine's retained sovereign immunity from suits in its own courts from both state and federal statutory claims bars both claims against these Defendants for similar reasons.

"In general, '[t]he immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty' and can only be waived by 'specific authority conferred by an enactment of the Legislature.'" *Knowlton v. Attorney Gen.*, 2009 ME 79, ¶ 12, 976 A.2d 973 (quoting *Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978)). Although the State can waive its sovereign immunity from suit through enactment of a statute, "[w]aivers are not generally implied, and even explicit waivers are construed narrowly." *Id.* The Law Court has "a long and solid history of interpreting statutes in order to avoid restraining the actions of the State unless the Legislature has expressly mandated the restraint." *Dep't of Corr. v. Pub. Utilities Comm'n*, 2009 ME 40, ¶ 11, 968 A.2d 1047. Thus, "[i]t is the general rule in Maine that the State is not bound by a statute unless expressly named therein." *State v. Crommett*, 116 A.2d 614, 616 (Me. 1955).

The Legislature has not waived the State's sovereign immunity so as to subject it to suits under MUTPA. MUTPA applies to "persons," which "include[s] . . . natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity." 5 M.R.S. § 206(2) (2016). The State itself is not explicitly named in MUTPA, thus it has not waived its sovereign immunity in order to be amenable to suit under MUTPA. The BBO, MCILS, the Office of Clerk of Courts, and the Maine District Court are all undoubtedly State of Maine entities. A claim for damages under MUTPA against these State of Maine entities is a claim against the State of Maine itself. *Cf. Drake*, 390 A.2d at 543. Because claims

42

against these entities are claims against the State, and because the Legislature has not waived the State's sovereign immunity here, Plaintiff's MUTPA claim against the BBO, MCILS, the Office of Clerk of Courts, and the Maine District Court is barred by sovereign immunity.

Plaintiff's MUTPA claim against the employee-Defendants of these entities (J. Scott Davis, Aria Eee, Judge Carlson, Judge Woodman, Justice Walker, Darlene Richards, Laureen Pratt, Elizabeth Maddaus, and John Pelletier) is asserted against them for actions each took in their duties and responsibilities as employees of State of Maine entities, which is in essence a suit against the State itself and is barred by sovereign immunity. *Cf. id.* (noting that "the liability to pay money to plaintiff is asserted as arising by virtue of the named defendant's activity in his official capacity as a public officer of the State of Maine").[26]

For claims based on federal statutes, such as the RICO claim, "[w]hile the Eleventh Amendment is inapplicable in state courts, absent a waiver, the State of Maine retains its privilege to assert sovereign immunity in its own courts." *Scott v. Androscoggin Cty. Jail*, 2004 ME 143, ¶ 23, 866 A.2d 88 (citing *Alden v. Maine*, 527 U.S. 706, 735-36 (1999)). "[A]s the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . ." *Alden*, 527 U.S. at 713. While state courts have jurisdiction to hear RICO claims,

> Congress [did not] explicitly subject states to potential liability under RICO. *See* 18 USC §§ 1961 to 1968 (no indication that states may be liable for RICO violations). The absence of a clear statement by Congress that states are subject to the substantive liability provisions of a federal statute is a strong indication that Congress did not intend to override the states' common law immunity to suit. *See Will v. Michigan Dept. of State Police*,

---

[26] The Court there based its determination on other factors not present here but, as discussed extensively in this order, Plaintiff's MUTPA claim against the governmental employee-Defendants clearly arises out of their activity as public officers of the State of Maine, and thus is essentially a claim against the State.

> *supra*, 491 U.S. at 66-67 (refusing to adopt an interpretation of §
> 1983 that disregarded Congress' failure to abrogate the states'
> Eleventh Amendment immunity).

*Anderson v. Dep't of Revenue*, 828 P.2d 1001, 1004-05 (Or. 1992). Alternatively, the State of Maine may waive its immunity and consent to suit. *Cf. Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). This Court is not aware of any action the State has taken to waive its immunity and consent to civil RICO suits. Regardless of whether an individual brings suit in Maine courts against the State of Maine under a state statute or a federal statute, it seems clear that the principles of sovereign immunity applicable to both state statutory and federal statutory claims derive from the same general sovereign immunity retained by the State of Maine.

In the Eleventh Amendment context in federal courts, state entities are subject to the same considerations for Eleventh Amendment immunity from suit. *See, e.g., Fla. Dep't. of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n.*, 450 U.S. 147, 150 (1981) (holding agencies of state government are part of the state for purposes of sovereign immunity). The Law Court has applied this principle with respect to State entities when they assert the general retained sovereign immunity in Maine courts. *See, e.g., Moody v. Comm'r, Dept. of Human Services*, 661 A.2d 156, 159 (Me. 1995). As entities of the State of Maine, the BBO, MCILS, the Office of Clerk of Courts, and the Maine District Court retain the privilege to assert sovereign immunity. Because they retain that privilege and have done so here, Plaintiff's RICO claim against the entities is barred by sovereign immunity.

Further, the RICO claim against the individual employee-Defendants also infringes upon the State's sovereign immunity. While suits for retroactive damages may be maintained against individual governmental employees in certain instances, sovereign immunity still applies when the claims against the individual governmental employees are in effect suits against the State.

*See Alden*, 527 U.S. at 756 ("Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State."). The Law Court has previously amalgamated claims against governmental employees into claims against the State for purposes of the application of the State's sovereign immunity without distinguishing between the sovereign immunity applicable to the employees versus the sovereign immunity applicable to the State itself.[27] *Cf. Knowlton*, 2009 ME 79, ¶ 1, 976 A.2d 973 (complaint against the Attorney General and the Superintendent of Insurance was treated as claim against the State for which the State had not waived its sovereign immunity). While the Law Court was not explicit in detailing why it treated the suits against the governmental employees as ones against the State, the attempted recovery of money damages from the Attorney General and the Superintendent of Insurance suggests the same reasoning the Law Court provided in *Drake*, where "the liability to pay money to plaintiff is asserted as arising by virtue of the named defendant's activity in his official capacity as a public officer of the State of Maine." *Drake*, 390 A.2d at 543. Although the Court in *Drake* based this conclusion on different factors that are not present here, this Court has analyzed extensively throughout this order how Plaintiff complains of actions taken by these individual Defendants in their capacities as governmental employees.

Thus, similar to the MUTPA claim, this Court finds Plaintiff's RICO claim against the individual governmental employee-Defendants to be in reality a claim against the State itself. As this Court noted in a preceding paragraph, a State is immune from suit in its own courts on both state and federal statutory claims because of the general principle of sovereign immunity retained

---

[27] *Knowlton* involved a question of whether the State had waived its sovereign immunity under a state statute, but the distinction does not seem material because, as the Court has discussed, the State's immunity from suit in its own courts from state statutes and federal statutes derives from the same general concept of retained sovereign immunity of the States.

45

by the State of Maine. Accordingly, because Plaintiff's RICO claim is a claim against the State of Maine in its own court, it is barred on the basis of sovereign immunity.

Based on the foregoing analysis, Counts XIII and XXI are dismissed relating to all BBO Defendants and all Judicial/MCILS Defendants, thus the BBO Defendants' and Judicial/MCILS Defendants' respective Motions to Dismiss with respect to Counts XIII and XXI are **GRANTED**.

2. Plaintiff's M.R. Civ. P. 80C Appeal of Administrative Action

In his Complaint,[28] filed January 17, 2017, Plaintiff included Count XXII, which is termed "M.R. Civ. P. 80C Appeal of Administrative Action." Plaintiff is seeking review of MCILS' Order Adopting Presiding Officer Logan's Recommended Decision with Modifications (the "Order"), which was entered December 13, 2016. (Admin. R. 34.) Plaintiff received notice of the Order via email on December 13, 2016, as evidenced by the 'read receipt' in the administrative record. (*Id.* 40.) Plaintiff also received a copy via certified mail on December 15, 2016. (*Id.* 41.) The Order upheld MCILS Executive Director John Pelletier's decision to remove Plaintiff from the MCILS' roster of attorneys after Plaintiff pursued his intra-agency appeal pursuant to 4 M.R.S. § 1804(3)(J) and 94-649 C.M.R. ch. 201, §§ 1-13 (2011). The Order is MCILS' "final administrative decision in the appeal." 94-649 C.M.R. ch. 201, § 13(5) (2011).

Pursuant to M.R. Civ. P. 80C, a party challenging a final agency action must file for review in the Superior Court within the time limit provided in 5 M.R.S. § 11002(3) (2016). *See* M.R. Civ. P. 80C(b). Under that section, "[t]he petition for review *shall be filed within 30 days after receipt of notice* [of the final agency action] if taken by a party to the proceeding of which review is sought." 5 M.R.S. § 11002(3) (emphasis added). A recent Law Court decision

---

[28] Plaintiff amended his Complaint, and the FAC also included the same Count XXII. However, the filing of the original Complaint is relevant for timing purposes.

explained why the time limits to file for review on an 80C appeal are important: "[t]he time limits set forth in the Administrative Procedure Act (APA), 5 M.R.S. §§ 11001-11008 (2016), 'are jurisdictional,' meaning that unless the petition is timely filed, the court lacks jurisdiction. If jurisdiction is lacking, the court must dismiss the petition." *Mutty v. Dep't of Corr.*, 2017 ME 7, ¶ 8, 153 A.3d 775 (internal citations omitted). In other words, "[i]f a party does not file an appeal within the statutory period, the Superior Court has no legal power to entertain the appeal." *City of Lewiston v. Me. State Emp. Ass'n*, 638 A.2d 739, 741 (Me. 1994).

Here, the Court lacks jurisdiction to review the Order and thus has no legal power to entertain Plaintiff's appeal. Plaintiff was a party to the proceeding of which he is seeking review and he received notice of the Order on December 13, 2016. (Admin. R. 34, 40.) The deadline for filing his appeal was January 12, 2017. Plaintiff's original Complaint was filed January 17, 2017, beyond the thirty-day jurisdictional filing limit. The language of M.R. Civ. P. 80C, the APA, and the case law is clear: if an aggrieved party does not file its petition for review within the required time limits after receiving notice of an agency's final decision, the Superior Court cannot hear the appeal.

Plaintiff's argument as to the timeliness of his 80C appeal is unavailing. He alleges his 80C appeal is timely because "Defendants had agreed to waive service of process and Plaintiff was awaiting the waivers from Defendants' counsels." (Pl.'s Resp. to Mots. to Dismiss ¶ 212.) An 80C appeal is not a standard complaint filed and served in the course of a standard civil action filed in the Superior Court where parties can agree to waive service; it is one of the rare instances where the Superior Court acts in an appellate role. Whether or not the Defendants agreed to waive service of the complaint containing civil claims for monetary damages against the Defendants is irrelevant. What is relevant is when the petition is filed in the Superior Court.

47

The Court cannot apply an excusable neglect to such a situation because the "[C]ourt has no authority to provide a waiver to statutory requirements such as the time for filing a petition for review." *Tardiff v. Magnusson*, No. AP-99-16, 2000 Me. Super. LEXIS 52, at \*3-4 (Mar. 31, 2000) (citing *McKenzie v. Maine Emp't Sec. Comm'n*, 453 A.2d 505 (Me. 1982) and *City of Lewiston*, 638 A.2d 739).

As the title of Chapter XI to the Rules of Civil Procedure indicates, there are "Special Rules for Certain Actions." One of those special rules for certain actions is an 80C petition for review must be filed within the time limits imposed by the APA, which requires an aggrieved party to file for review in the Superior Court within thirty days after receipt of notice of the final agency action. Plaintiff did not do so here, thus the Court is without power to entertain his appeal and it must be dismissed.

What is more, even if Plaintiff's appeal were timely, Plaintiff did not prosecute his appeal. Part of the typical appellate process is to file appellate briefs, and it is no different for an 80C appeal: "[a]n 80C case proceeds to final decision in the Superior Court on an automatic schedule of briefing and oral argument set out in the rule." *Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1312 n.3 (Me. 1987) (citing M.R. Civ. P. 80C(g)). As the rule makes clear, "[u]nless otherwise ordered by the court, all parties to a review of governmental action shall file briefs. The petitioner shall file the petitioner's brief within 40 days after the date when the administrative agency files the record of the proceedings with the court." M.R. Civ. P. 80C(g). If the petitioner does not file his appellate brief in that time, "the court may dismiss the action for want of prosecution." M.R. Civ. P. 80C(h).

Here, the Court did not order the parties to deviate from the briefing schedule delineated in M.R. Civ. P. 80C(g). MCILS properly filed the administrative record on February 10, 2017.

Pursuant to M.R. Civ. P. 80C(g), Plaintiff's brief was due March 22, 2017. However, Plaintiff has not filed a brief for his 80C appeal at all. Accordingly, Plaintiff failed to pursue his appeal and the Court may dismiss it for want of prosecution.

Because Plaintiff's 80C Petition was not timely filed and, even if it were, because Plaintiff failed to prosecute his appeal by not filing an appellate brief within the time stated in the Rules, Plaintiff's 80C Petition is **DISMISSED**.

3. Counts XXIII and XXIV (Requests for Declaratory Judgment)

Plaintiff has requested the Court to issue declaratory judgments with respect to his removal from the MCILS' roster in conjunction with the cessation of his court-appointed work, as well as Judge Carlson and Judge Woodman recusing themselves from cases in which Plaintiff was named counsel. (Pl.'s Amnd. Compl. ¶¶ 345-53.) However, "whether a declaratory judgment should be issued rests in the sound discretion of the trial court." *Capodilupo v. Town of Bristol*, 1999 ME 96, ¶ 3, 730 A.2d 1257 (citing *Dodge v. Town of Norridgewock*, 577 A.2d 346, 347 (Me. 1990)); *see also* 14 M.R.S. § 5958 (2016). "The court should exercise its authority to issue such a declaration only when some useful purpose will be served." *Dodge*, 577 A.2d at 347. Because the Court has already analyzed the issues with respect to Plaintiff's MCILS/court-appointed claims and the recusal decisions of Judges Carlson and Woodman and granted the parties' respective Motions to Dismiss on these issues, those rulings are dispositive on the declaratory judgment counts. Accordingly, the Court declines to exercise its declaratory judgment jurisdiction.

**II. Dr. Donovan's Motions to Dismiss**

Dr. Donovan's role in this lawsuit began with his involvement in a workers' compensation case relating to an individual referred to as Richard T. in which Plaintiff served as

49

Richard T.'s attorney. (Pl.'s Amnd. Compl. ¶¶ 197-99.) Dr. Donovan served as a Section 312 independent medical examiner pursuant to 39-A M.R.S. § 312 (2016). (J. Brennan Order 3.) As a result of his interactions—and concerns with Plaintiff's conduct as an attorney—during Richard T.'s claim before the Maine Workers' Compensation Board, Dr. Donovan filed a grievance complaint with the BBO. (*Id.* 3-6.)

Plaintiff's claims for relief against Dr. Donovan stem from what Plaintiff alleges as Dr. Donovan "embellish[ing] and fil[ing] a bar complaint in retribution for what [Dr. Donovan] falsely thought was Plaintiff's complaint to the medical board." (Pl.'s Amnd. Compl. ¶ 196.) Further, Plaintiff accuses Dr. Donovan of making false representations to the BBO during the disciplinary proceedings against Plaintiff. (*Id.* ¶¶ 206, 252.) For these alleged transgressions, Plaintiff has asserted eleven state law tort claims against Dr. Donovan, and has claimed Dr. Donovan violated MUTPA and RICO. Specifically, by way of naming "All" Defendants or listing Dr. Donovan by name, Plaintiff has asserted Counts I, IV, V, VI, VIII, IX, X, XI, XII, XIII, IXX [sic], XX, and XXI against Dr. Donovan. In response, Dr. Donovan filed both a Motion to Dismiss Pursuant to Rule 12(b)(6) and a Special Motion to Dismiss First Amended Complaint Pursuant to 14 M.R.S.A. § 556. Due to the priority the Legislature has placed on swift dismissal of meritorious anti-"Strategic Lawsuit Against Public Participation" ("SLAPP") motions, the Court considers the latter Motion first.

## A. Dr. Donovan's Special Motion to Dismiss First Amended Complaint Pursuant to 14 M.R.S.A. § 556

Defendant Dr. Donovan moved to dismiss Plaintiff's FAC on the basis of 14 M.R.S. § 556 (hereinafter, "Maine's Anti-SLAPP Statute"), which "provides a procedure for the expedited dismissal of lawsuits that are brought not to redress a legitimate wrong suffered by the plaintiff,

but instead solely for the purpose of dissuading a defendant from exercising his First Amendment right to petition the government or *punishing him for doing so.*" *Desjardins v. Reynolds*, 2017 ME 99, ¶ 6, 162 A.3d 228 (emphasis added). Maine's Anti-SLAPP Statute requires the Court to

> grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556 (2016). Considering such a motion requires the Court to balance and protect both a defendant's First Amendment right to petition the government against a plaintiff's right to seek redress in the courts for injury as a result of a defendant's exercise of its right of petition. *Gaudette v. Davis*, 2017 ME 86, ¶ 6, 160 A.3d 1190. The statute defines "a party's exercise of its right to petition" quite broadly to cover

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556.

A motion to dismiss pursuant to Maine's Anti-SLAPP Statute

> imposes a burden-shifting procedure between the moving and nonmoving parties. First, in a motion with accompanying affidavits, the moving party (usually the defendant) must

51

demonstrate, as a matter of law, that the anti-SLAPP statute applies to the conduct that is the subject of the plaintiff's complaint by establishing that the suit was based on some activity that would qualify as an exercise of the defendant's First Amendment right to petition the government. If the defendant fails to meet his initial burden, the special motion to dismiss must be denied.

If the defendant satisfies this initial burden, the burden then shifts to the nonmoving party (usually the plaintiff) to offer prima facie evidence that the defendant's exercise of his right to petition (1) was devoid of any reasonable factual support or any arguable basis in law and (2) caused actual injury to the plaintiff. If the plaintiff fails to meet this prima facie burden for all of the petitioning activities at issue—either by the absence of the minimum amount of evidence on either element or based on some other legal insufficiency—the special motion must be granted and the case dismissed.

*Desjardins*, 2017 ME 99, ¶¶ 8-9, 162 A.3d 228 (citations and quotations omitted). If the

nonmoving party is unable to meet the necessary burden, "the claims *specifically based* on the

moving party's petitioning activity are properly considered for dismissal." *Camden Nat. Bank v.*

*Weintraub*, 2016 ME 101, ¶ 9, 143 A.3d 788, 793 (emphasis added).

Here, all of Plaintiff's claims against Dr. Donovan stem from two actions[29] which the

---

[29] Plaintiff attempts to argue Dr. Donovan negligently mistreated Richard T. during his workers' compensation case and cost Richard T. over $140,000. (Pl.'s Amnd. Compl ¶ 199; Pl.'s Opp. Spec. MTD ¶ 2.) However, Richard T. is not a party to this case and Plaintiff does not have standing to assert claims on his behalf. *See Proctor v. Cty. of Penobscot*, 651 A.2d 355, 357 (Me. 1994) (emphasis added) (citations omitted) ("[T]o have standing *a litigant* must have suffered a particularized injury that is distinct from the harm suffered by the public at large. We have construed particularized injury as an injury resulting from an action adversely and *directly* affecting the party's property, pecuniary or personal rights.").

Further, even if Plaintiff did have standing to sue on behalf of Richard T., or even if Richard T. were a party to this litigation, Dr. Donovan would seemingly be immune from any claims arising out of his alleged negligent mistreatment of Richard T. in his role as an independent medical examiner during Richard T.'s workers' compensation case. *See* 39-A M.R.S. § 312(8) (2016) (emphasis added) ("Any health care provider *acting without malice and within the scope of the provider's duties as an independent medical examiner* is immune from civil liability for making any report or other information available to the board or for assisting in the origination, investigation or preparation of the report or other information so provided."). Plaintiff alleged Dr. Donovan negligently mistreated Richard T. in his role as an independent medical examiner. Richard T. even filed a complaint against Dr. Donovan with the Board of Medicine based on this alleged negligent mistreatment, which the Board of Medicine dismissed. (Pl.'s Amnd. Compl. ¶¶ 200, 206.) In any event, despite Plaintiff referencing this alleged negligent mistreatment, it is clear all of Plaintiff's claims against Dr. Donovan arise out of Dr. Donovan filing a grievance complaint against Plaintiff and testifying during the BBO proceedings against Plaintiff. (*See, e.g., id.* ¶¶ 196, 206, 209, 211, 252, 295.)

Court finds as a matter of law[30] qualify as an exercise of the right to petition pursuant to Maine's Anti-SLAPP Statute: Dr. Donovan's filing of a grievance complaint with the BBO against Plaintiff concerning Plaintiff's conduct as an attorney and Dr. Donovan's testifying during the BBO proceedings against Plaintiff. (*See, e.g.,* Pl.'s Amnd. Compl. ¶¶ 196, 206, 209, 211, 252, 295.) Dr. Donovan provided the Court with Justice Brennan's November 21, 2016, Order—discussed in the Legal Standard Section, *supra*—to show Dr. Donovan was engaged in petitioning activity that is covered by Maine's Anti-SLAPP Statute and to preemptively show it would be factually and legally impossible for Plaintiff to meet his prima facie burden of showing Dr. Donovan lacked any reasonable factual support or any arguable basis in law.

Both the filing of the grievance complaint with the BBO and testifying at the BBO proceedings squarely fall within the definition of "a party's exercise of its right to petition" pursuant to 14 M.R.S. § 556. The BBO "is a quasi-judicial agent of the [Supreme Judicial] Court." M. Bar R. 12. By filing the grievance complaint and subsequently testifying in the BBO proceedings, Dr. Donovan was expressing his concerns to what could only be deemed a judicial body or other governmental proceeding about a licensed Maine attorney's professional conduct.[31] *Cf. Borough of Duryea v. Guarnieri,* 564 U.S. 379, 388 (2011) (describing what a citizen's right to petition the government is intended for). Thus, Dr. Donovan's filing of a grievance complaint and testifying during the BBO proceedings fall within the purview of Maine's Anti-SLAPP Statute because they squarely fit within the definition of "a party's exercise of its right to petition" as written and oral statements submitted to and made before a judicial body or other governmental proceeding. Because the Court finds Dr. Donovan met his

---

[30] The determination of whether or not conduct qualifies as petitioning activity under Maine's Anti-SLAPP Statute "is purely a question of law for the court's decision." *Gaudette,* 2017 ME 86, ¶ 16, 160 A.3d 1190.

[31] See Section I(A)(2)(d), *supra*, for a discussion on why proceedings before the BBO are strikingly similar to formal judicial proceedings.

initial burden, the burden shifts to Plaintiff to show that Dr. Donovan's grievance complaint against Plaintiff and Dr. Donovan's testimony at the subsequent BBO hearings each "(1) [were] devoid of any reasonable factual support or any arguable basis in law *and* (2) caused actual injury to the plaintiff." *Desjardins*, 2017 ME 99, ¶ 9, 162 A.3d 228 (emphasis added) (citations and quotations omitted).

In opposition, Plaintiff failed to submit evidence which would satisfy the prima facie burden at this step—let alone any evidence—which would show Dr. Donovan's grievance complaint and testimony before the BBO lacked any reasonable factual support or an arguable basis in law, and instead made conclusory statements without any factual or legal support of his own. The Law Court has previously cautioned that averments made on information and belief do not satisfy the prima facie burden, and the nonmoving party must instead provide *some* admissible evidence to meet its burden on this step. *See Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 19, 66 A.3d 571 (citations and quotations omitted).[32] Plaintiff's FAC characterizes Dr. Donovan's grievance complaint as containing "embellished charges" and being "filed . . . in retribution for what [Dr. Donovan] falsely thought was Plaintiff's complaint to the medical board," but he has not provided the Court with anything which could be construed as admissible evidence to meet his prima facie burden at this stage. (Pl.'s Amnd. Compl. ¶ 196.) Even more damning, Justice Brennan's November 21, 2016, Order belies any notion whatsoever that Dr. Donovan lacked any reasonable factual support or any arguable basis in law to file a grievance

---

[32] The Law Court recently discussed Maine's Anti-SLAPP Statute in *Gaudette v. Davis*, 2017 ME 86, 160 A.3d 1190, which abrogated *Nader v. Me. Democratic Party*, 2012 ME 57, 41 A.3d 551, 554, the predecessor to the *Nader* case cited above. The Law Court's decision in *Gaudette v. Davis* changed the burden shifting process under Maine's Anti-SLAPP Statute to the extent of establishing an additional procedural step if the nonmoving party met its burden of production on the second step. 2017 ME 86, ¶ 18, 160 A.3d 1190. It does not appear that the Law Court changed how trial courts are to view the evidence, if any, submitted by the nonmoving party in an attempt to meet its prima facie burden at the second step, and indeed the Law Court cited approvingly in *Gaudette v. Davis* to ¶ 19 from *Nader v. Me. Democratic Party*, 2013 ME 51, 66 A.3d 571, when noting that the special motion to dismiss must be granted if the nonmoving party does not meet any portion of its prima facie burden.

complaint against Plaintiff and to testify in the subsequent proceedings before the BBO.

Indeed, "after hearing through Bar Counsel [J. Scott Davis] from the respective complainants (as applicable), [Plaintiff], and the [BBO]," Justice Brennan entered his Order with specific findings. (J. Brennan Order 2.) In paragraph 8 of his Opposition to Defendant Dr. Donovan's Special Motion to Dismiss, Plaintiff claims Dr. Donovan's complaint to the BBO did not lead to a direct finding against Plaintiff. However, this notion is again belied by Justice Brennan's finding that "[Plaintiff's] failure to timely provide the necessary medical documents to Dr. Dr. Donovan constituted violations of M.R. Prof. Conduct 1.1 [competence] and 1.3 [diligence]." (Id. 6.) As a result of the attorney discipline action against Plaintiff pursuant to M. Bar R. 13(g), Plaintiff was suspended from practicing law in Maine for two years, with that suspension being suspended, subject to twenty-eight separate conditions Plaintiff must comply with. (Id. 9.) Most alarmingly, Plaintiff "agreed to the entry of [the] negotiated Order identifying [Plaintiff's] misconduct and the resulting sanctions imposed by the Court," but then almost immediately filed the instant lawsuit against many of those involved in filing of grievance complaints and the resulting BBO proceedings. (Id. 1.)

While Plaintiff's burden on the second step to offer prima facie evidence is not a great one, *see Camden Nat. Bank*, 2016 ME 101, ¶ 11, 143 A.3d 788, Plaintiff has failed to meet even this low burden here. Plaintiff has not established prima facie evidence showing that Dr. Donovan's petitioning activity was "devoid of any reasonable factual support or any arguable basis in law," therefore the Court need not analyze whether Plaintiff offered prima facie evidence that Dr. Donovan's petitioning activity "caused actual injury" to Plaintiff. *See Gaudette*, 2017 ME 86, ¶ 17, 160 A.3d 1190 (noting that the Court must grant the special motion to dismiss "[i]f the plaintiff fails to meet any portion of this prima facie burden"). Because Plaintiff has not met

55

this burden, his claims against Dr. Donovan based on Dr. Donovan's filing of a grievance complaint against Plaintiff and subsequently testifying at the resulting BBO proceedings must be dismissed. *See Desjardins*, 2017 ME 99, ¶ 9, 162 A.3d 228. Accordingly, Dr. Donovan's Special Motion to Dismiss First Amended Complaint Pursuant to 14 M.R.S.A. § 556 is **GRANTED**. Because Plaintiff's allegations against Dr. Donovan arise solely from Dr. Donovan's protected petitioning activity, Counts I, IV, V, VI, VIII, IX, X, XI, XII, XIII, IXX [sic], XX, and XXI against Dr. Donovan are dismissed.

## B. Dr. Donovan's Motion to Dismiss Pursuant to Rule 12(b)(6)

Because all of Plaintiff's claims against Dr. Donovan arise out of Dr. Donovan's protected petitioning activity and the Court granted Dr. Donovan's Special Motion to Dismiss, the Court chooses not to address Dr. Donovan's Motion to Dismiss Pursuant to Rule 12(b)(6).[33]

## III. The Journal's Motion to Dismiss

## A. Background

In his FAC, Plaintiff alleges a variety of causes of action against the Journal. It is difficult to discern which allegations pertain to the Journal because he lists "All" as defendants in some of the counts even though some allegations have nothing to do with this Defendant, and he fails to identify which Defendants are being sued in other counts. Because ruling on this 12(b)(6) involves an analysis of each count individually, the Court will recite the relevant counts in the order in which they appear in his FAC. Reading the FAC liberally, the following Counts are possibilities as pleaded against the Journal (Plaintiff's numbering):

---

[33] The Court notes that any claims based on Dr. Donovan's testimony during the BBO proceedings would seemingly be barred based on the absolute witness immunity discussed in Motions to Dismiss Section I(A)(2)(d), *supra*, for the same reasons. There may be an issue as to whether or not the claims based on Dr. Donovan allegedly filing a grievance complaint in retribution against Plaintiff are barred by M. Bar R. 7.3(a)(1) (2014) (repealed effective July 1, 2015). However, the Court is only noting this without issuing a ruling at this time because of the dismissal of the claims against Dr. Donovan pursuant to 14 M.R.S. § 556.

- Count I (Negligence);

- Count IV (Invasion of Privacy & Disclosure);

- Count V (Defamation & False Light);

- Count VI (Malicious Prosecution);

- Count VIII (Fraud Upon the Court);

- Count IX (Misrepresentation);

- Count X (Conspiracy);

- Count XII (Tortious Interference with Prospective and Actual Economic Advantage, Tortious Interference with Contractual Relations); and,

- Count XXV (Invasion of Privacy—False Light).

Additionally, the Defendants in the following counts are not named:

- Count XIII (Violation of Maine Unfair Trade Practices Act);

- Count IXX [sic] (actually XIV) (Negligent Infliction of Emotional Distress);

- Count XX (actually XV) (Intentional Infliction of Emotional Distress);

- Count XXI (actually XVI) (Violation of RICO);

- Count XXII (actually XVII) (M.R. Civ. P. 80C Appeal of Administrative Action);

- Count XXIII (actually XVIII) (Declaratory Judgment);

- Count XXVI (actually XXI) (Punative [sic] Damages);

- Count XXVII (actually XXII) (Retraining [sic] Order); and,

- Count XXVIII (actually XXIII) (Attorneys [sic] Fees).

The Journal moved to dismiss these causes of action for failure to state claims upon which relief can be granted. As previously discussed, the Court must accept the facts alleged in the complaint as true, *Saunders v. Tischer,* 2006 ME 94, ¶ 8, 902 A.2d 830, and "examine the

complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief according to some legal theory. *Graham,* 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting *Saunders,* 2006 ME 94, ¶ 8, 902 A.2d 830).

**B. Legal Discussion**

1. Counts That Clearly Do Not Apply to the Journal

Several of these counts can be dismissed against the Journal with little or no discussion. Plaintiff's Counts XXVI (Punative [sic] Damages) and XXVII (Attorneys [sic] Fees) are not substantive but are properly brought as part of a damages request. Count XXII (M.R. Civ. P. 80C Appeal of Administrative Action) is an appeal of a MCILS proceeding that did not involve the Journal. These counts are dismissed.

Other counts, according to what is explicitly alleged in each count, clearly do not apply to the Journal. These include Count VI (Malicious Prosecution), which addresses the actions of two judges and those who initiated and maintained disciplinary proceedings against Plaintiff; Count VIII (Fraud Upon the Court), which addresses the filing of allegedly false claims and testifying falsely in the resulting proceedings without maintaining that any Journal employee filed a complaint or testified; Count XX (Intentional Infliction of Emotional Distress), which alleges lying at a BBO hearing without maintaining that any Journal employee testified; Count XXIII (Declaratory Judgment), which addresses Plaintiff's removal from the MCILS' roster with no allegation of the Journal's involvement; and Count XXIV (Declaratory Judgment), which addresses judicial recusal only. These counts are also dismissed.

2. Publication Counts.

In Counts I, IV, V, and XXV, Plaintiff includes causes of action that are based on

allegations that the Journal published misrepresentations and false information about Plaintiff.

a. Negligence, Defamation and Violation of Privacy

    i. Negligence and Defamation

In his negligence count, Plaintiff accuses the Journal of taking the "lies" of the judges, MCILS, and the BBO, and writing "another libelous batch of stories." (Pl.'s Amnd. Compl. ¶ 218.) In doing so, he alleges nothing more than defamation, expressed as Count V of his FAC. To make out a claim for defamation, Plaintiff must allege facts sufficient to show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189. Because negligence suffices in proving a defamation count, it is duplicative to also allege negligent libel, which is the same as defamation. For this reason, the Court will consider these counts together.

In the FAC, Plaintiff describes, at least generally, the types of "lies" and "falsehoods" repeated by each of the three classifications of defendants. Bar Counsel J. Scott Davis "slandered Carey by bringing forth and advancing false language and claims in court document and hearing [sic] that were public." (Pl.'s Amnd. Compl. ¶ 248.) The Judicial Defendants "defamed Plaintiff by outright [sic] inventing outright libelous falsehoods about Carey in documents filed in formal proceedings and in court and they slandered Plaintiff imputing misconduct in his job/trade in testifying in public Board of Overseers proceedings open to the public and published on its website . . . ." (*Id.* ¶ 251.) The clerks, MCILS, John Pelletier, and Dr. Donovan "defamed plaintiff by testifying in public proceedings with false slanderous charges, or in conversations to the BBO and its agents, or in written complaints." (*Id.* ¶ 252.)

59

He alleges the Journal's role in the alleged defamation is in publishing these "lies and embellishments." (*Id.* ¶ 249.)

In pleading defamation, the false or defamatory statement must be more than merely an opinion; it must be an explicit or implicit assertion of fact. *Lester v. Powers,* 596 A.2d 65, 69 (Me. 1991). The truth of the statements is always a defense to a claim for defamation, and in order for the defendant to be able to defend against the claim, "the defendant is therefore entitled to know precisely what statement is attributed to him." *Picard,* 307 A.2d at 835. "[M]aterial words, those essential to the charge made, must be proved as alleged, but . . . some latitude may be allowed with respect to unimportant, connecting or descriptive words. *Id.* Here, Plaintiff's negligence and defamation allegations fall short of these requirements because at no time does he state with any degree of specificity the actual content of the defamatory statements. Although the FAC contains a degree of specificity in the first 216 paragraphs—most of what he asserts as falsehoods are statements of opinion concerning his competence—he does not indicate what allegedly false statements were published by the Journal.[34]

### ii. Violation of Privacy

Plaintiff alleges two different forms of violation of privacy: violation by disclosure and false light. Violation of privacy by disclosure requires proof of public disclosure of private facts, which means the invasion of something secret, secluded, or private pertaining to the plaintiff. *Estate of Berthiaume v. Pratt,* 365 A.2d 792, 795 (Me. 1976). Plaintiff alleges this cause of action as an *alter ego* of defamation—the publishing of falsehoods against him—and does not allege the disclosure of anything private, either in the body on Count IV, or in the first 216

---

[34] The lack of specificity in the allegation also raises constitutional concerns. From the description contained in Count V, it appears that the Journal reported on assertions made at hearings and contained in official documents. This raises the question of whether it was reporting public information which would be protected by the First Amendment to the Constitution. *See Cox v. Cohn,* 420 U.S. 469, 495 (U.S. 1975).

paragraphs of the FAC, so this Count is dismissed.

Plaintiff also alleges violation of privacy (false light). Again, he alleges this form of violation of privacy as a supplement to defamation, addressing the same conduct on the part of the Defendants. Although he alleges that the Journal publicized a matter concerning him, that it placed him before the public in a highly offensive false light, and that they acted recklessly, at least, in doing so, there is the same lack of specificity as in the defamation count. In similar circumstances, the United States District Court, District of Maine, dismissed claims of false light invasion of privacy where the plaintiff did not provide the court with any of the alleged articles the defendants published which placed the plaintiff in a false light. *See Bloomquist v. Albee*, No. Civ. 03–276–P–S, 2004 WL 2203469, at *5-6 (D. Me. Sept. 29, 2004), *report and recommendation adopted in part*, 2004 WL 3017046 (D. Me. Dec. 21, 2004), *report and recommendation adopted in part*, 2004 WL 3017044 (D. Me. Dec. 21, 2004). The plaintiff there "made no attempt to identify . . . exactly what it is the defendant said that should be subject to his tort theory of liability[,] . . . [thus] the pleading simply [did] not deliver a substantive allegation that a defamation/false light defendant could properly address by way of defense." *Id.* at *6. Under these circumstances and for the same reasons, including serious First Amendment concerns, the Court finds that the allegation here is inadequate and the Count is dismissed.

3. RICO

Count XXI alleges a RICO violation. In his RICO conspiracy count, Plaintiff alleges that "Defendants" protected attorneys they were aligned with and filed outright false charges against numerous attorneys and others who challenged their "fraudulent enterprise," using the BBO to further its scheme. (Pl.'s Amnd. Compl. ¶ 319.) He also alleges that as a part this plan, Defendants undertook to frame and fraudulently accuse Plaintiff of misconduct and

61

incompetence to permanently damage Plaintiff, "who dared challenge those in their 'private club.'" (*Id.* ¶ 322.) Amidst these claims, Plaintiff also asserts certain prerequisites such as engaging in a pattern of this activity with at least two acts of racketeering within ten years, deriving income in a manner that affected interstate commerce, and using the mails or wires to accomplish their racketeering goals. As applied to the Journal, Plaintiff must be alleging that the newspaper had agreed to participate in these activities with the other RICO co-conspirators, yet includes no direct allegation of this sort, nor facts supportive of the existence of such an agreement.

To properly allege a RICO conspiracy, a plaintiff must allege at a minimum that each defendant agreed to commit two or more specified predicate crimes in addition to alleging an agreement "to participate in the conduct of an 'enterprise's' affairs through a 'pattern of racketeering activity.'" *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir. 1981). The plaintiff "must also make factual allegations respecting the material elements of the offense, including the element of an agreement to violate RICO." *Gott v. Simpson*, 745 F. Supp. 765, 772 (D. Me. 1990).

Pleading a RICO count is subject to the heightened pleading standard required for fraud, and a plaintiff alleging mail and wire fraud—as Plaintiff has done here—must "specify the time, place, and content of the alleged false representation, and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transaction furthered the fraudulent scheme." *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1546 (D. Colo. 1990) (citations omitted). Further, "the plaintiff must identify specifically each person who is alleged to be liable under RICO. Merely collectivizing defendants in an alleged pattern of racketeering activity will not suffice." *Id.* Not only has Plaintiff not specified the time, place, content, and

how the complained-of mailing or transaction furthered the fraudulent scheme, but he also did not specifically identify each person allegedly liable, and instead collectivized the Defendants in an alleged pattern of racketeering. After examining all aspects of the FAC, including the 216 paragraphs of factual background and the specific content of Count XXI, the Court finds absolutely no factual support for the allegation and the Count must be dismissed.

### 4. Remaining Counts

The Journal should not be considered a defendant in Count IX (Misrepresentation) which the Court perceives to be an attempt to allege negligent or fraudulent misrepresentation. This tort requires the allegation that the defendant gave false information of a material fact for the guidance of others in a business transaction and failed to exercise reasonable care in obtaining or communicating the information, and that the plaintiff justifiably relied upon the information to his economic disadvantage. *See* Alexander, *Maine Jury Instruction Manual* § 7-31 at 7-46 (2014 ed.). There is no factual allegation that the Journal engaged in this type of conduct anywhere in the FAC and the Count is dismissed.

Count X alleges conspiracy and from its content, it specifically alleges a conspiracy to defame engaged in by the named Defendants consisting of three judges and Bar Counsel who "got together in whole as a group or in smaller meetings consisting of the jurists or some of them, and unlawfully conspired how to defame Plaintiff Carey." (Pl.'s Amnd. Compl. ¶ 291.) Conspiracy as a cause of action cannot stand alone because "absent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails." *Cohen v. Bowdoin,* 288 A.2d 106, 110 (Me. 1972). The Court has considered the conspiracy aspect of the defamation when it addressed that tort separately, and dismisses this count because it has dismissed the companion defamation count.

63

In Count XII, Plaintiff alleges tortious interference with economic advantage or contractual relations. He described the alleged misdeeds as "intentionally and recklessly espousing mistruths to anyone that would listen, (including before a state Grievance Panel) to defame Plaintiff, then conspiratorially 'cover for' each other's misdeeds," and by "slandering Carey and taking away his court-appointed cases for no valid reason," "putting an end to Carey's court-appointed caseload . . . ." (Pl.'s Amnd. Compl. ¶¶ 300-02.) To prove this Count, Plaintiff must prove that he had a valid contract or prospective economic advantage and that the defendant by fraud or intimidation induced a party to break the contract or advantageous relationship, that it would have continued but for the wrongful interference, and that the plaintiff has been damaged. *See* Alexander, *Maine Jury Instruction Manual* § 7-33 at 7-49 (2014 ed.). Not only does Plaintiff fail to plead these necessary elements, but the FAC is also devoid of allegations of fraud and intimidation by the Journal. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity*." M.R. Civ. P. 9(b) (emphasis added); *cf.* M.R. Civ. P. 8. The requirement to plead fraud with particularity is to ensure "the defendant is fairly apprised of the elements of the claim." 2 Harvey, *Maine Civil Practice* § 9:2 at 384 (3d ed. 2011). Clearly, this count does not pertain to the Journal, but addresses the actions of those Defendants Plaintiff feels are responsible for causing him to be removed from the court-appointed list. Plaintiff pleaded no facts that could be interpreted as claiming that the Journal has a role in this and the Count is dismissed.

Count XIII alleges a violation of MUTPA. Again, Plaintiff's reliance on this cause of action against the Journal is misplaced. Properly alleged, this claim should include an allegation that the plaintiff is harmed by the purchase or lease of "goods, services or property, real or personal, primarily for personal, family or household purposes." 5 M.R.S. § 213(1). No such

allegation or facts supporting such an allegation can be found in the FAC. Instead, Plaintiff alleges he is required to pay a yearly fee to the BBO, as well as a fee to take the bar examination, and was required to pay $500 as a court-ordered sanction in the disciplinary action. The argument that these expenditures satisfy the above MUTPA requirement in an action against those involved in the disciplinary proceedings or implicated in removing him from the court-appointment list is tenuous, but entirely untenable in an action against the Journal because Plaintiff alleges no economic relationship between the two of any sort, and provides no facts supporting the proposition.

Count IXX [sic] alleges negligent infliction of emotional distress against all Defendants through their "defamatory and conspiratorial actions," as well through "outright repeated mistruths and embellishments." (Pl.'s Amnd. Compl. ¶¶ 309, 311.) Among the elements of this tort is the requirement that the defendant must owe a duty of care to the plaintiff, which must be "based upon the unique relationship of the parties . . . ." *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 31, 738 A.2d 839. Plaintiff's FAC neither alleges a special duty of care nor facts that could be interpreted as alleging a unique or special relationship. Furthermore, the First Circuit, in interpreting Maine law, has ruled that the NBC network did not have the required special relationship with a plaintiff who won an emotional distress damages award as a result of Dateline NBC's negative portrayal of him. *See Veilleux v. National Broadcasting Co.*, 206 F.3d 92, 129-132 (1st Cir. 2000). The result was dictated by the court's conclusion that the relationship between a journalist and a potential subject did not resemble those relationships that the Maine Law Court had recognized as being "special" enough to permit a plaintiff to recover in negligent infliction of emotional distress cases. *Id.* at 132. This Count is dismissed.

65

In Count XVII, the Plaintiff requests a temporary restraining order against the Journal. However, because there is no conduct of the Journal's upon which Plaintiff successfully states a claim for relief, there is no actionable conduct that can be restrained. Thus, Plaintiff's request for a restraining order is dismissed because there is no surviving count to which it is appurtenant.

For the foregoing reasons, the Sun Journal's Motion to Dismiss is **GRANTED** in its entirety and Counts I, IV, V, VI, VIII, IX, X, XII, XIII, IXX [sic], XX, XXI, XXII, XXIII, XXIV, XXV, XXVI, XXVII, and XXVIII are dismissed.

The entry is:

1. The Motions to Dismiss by the governmental entities only (i.e., the BBO, the Maine District Court, the Office of Clerk of Courts, and MCILS)—with respect solely to the state law tort claims which are subject to the MTCA and for which the entities may maintain liability insurance—are converted to motions for summary judgment. The Court directs the BBO, the Maine District Court, the Office of Clerk of Courts, and MCILS to file all material—including supporting affidavits—required by M.R. Civ. P. 56 and M.R. Civ. P. 7 within twenty-one days of the date of this Order. Subsequent briefing shall proceed pursuant to the time limits established in M.R. Civ. P. 7.
2. The BBO Defendants' Motion to Dismiss Plaintiff's FAC is **GRANTED,** and all claims against them are dismissed except as to the extent discussed in Entry 1.
3. The Judicial/MCILS Defendants' Motion to Dismiss Plaintiff's FAC is **GRANTED,** and all claims against them are dismissed except as to the extent discussed in Entry 1.
4. Dr. Donovan's Special Motion to Dismiss Plaintiff's FAC Pursuant to 14 M.R.S. § 556 is **GRANTED,** while the Court has declined to address Dr. Donovan's Motion to Dismiss Pursuant to M.R. Civ. P. 12(b)(6) at this time, and all claims against Dr. Donovan are dismissed.
5. The Journal's Motion to Dismiss Pursuant to M.R. Civ. P. 12(b)(6) is **GRANTED,** and all claims against the Journal are dismissed.
6. Plaintiff's M.R. Civ. P. 80C Appeal of Administrative Action is **DISMISSED.**
7. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 10/25/17

William R. Anderson
Justice, Maine Superior Court

66